[Civ. No. 55574. Second Dist., Div. Three. Dec. 27, 1979.]

GRACE E. SIMONS et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents;
LOS ANGELES POLICE REVOLVER AND ATHLETIC
CLUB, INC., Real Party in Interest and Respondent.

COUNSEL

G. G. Baumen for Plaintiffs and Appellants.

Burt Pines, City Attorney, William B. Burge, Assistant City Attorney, and Lorna Gail Gordon, Deputy City Attorney, for Defendants and Respondents.

Frank J. Kanne, Jr., for Real Party in Interest and Respondent.

OPINION

**COBEY, Acting P. J.**—This appeal, from a judgment denying relief in mandamus, poses the question whether real party in interest, Los Angeles Police Revolver and Athletic Club, Inc. (hereafter Club), was properly granted permission by respondents, City of Los Angeles and Los Angeles City Planning Commission (hereafter City and Commission), to build two relocatable classrooms in a building on a portion of a

3.78-acre parcel primarily used for many years to provide vehicle parking for those using the directly adjoining Los Angeles Police Academy (hereafter Police Academy), through approval of the construction plans for the building involved by the Commission and the city council rather than through the issuance of a conditional use permit for this use of this property. For reasons that follow we intend to hold that the procedure followed was legally correct and, therefore, the judgment under appeal must be affirmed.

## FACTS

The Club has been incorporated since December 6, 1934, as a California nonprofit corporation. From at least January 1941 to at least August 1976 the already-mentioned 3.78-acre parcel was used as a part of the Police Academy primarily for parking and secondarily for training.[1] The Club leased the parcel from April 15, 1935, to April 15, 1946, when it acquired the land in fee.

The Police Academy is an educational institution which trains officers and prospective officers of the Los Angeles Police Department. It is operated by the Club through publicly paid personnel from the police department and the city attorney's office. The bulk of the academy's facilities are located on a 21.464-acre parcel in Elysian Park directly adjoining the smaller parcel. These facilities were originally contributed generally by the Club. The 21.464-acre parcel is in a R1-1 (residential one-story) zone. (See *Simons* v. *City of Los Angeles* (1976) 63 Cal. App.3d 455, 463-464 [133 Cal.Rptr. 721].)

The construction of the relocatable classroom building was paid entirely by the Los Angeles Police Academy trust, a privately endowed tax exempt trust administered solely by the Club for police training. The Club leases the 3.78-acre parcel to the trust on an annual basis at a nominal rate. The classroom building was completed in or about December 1976 and has apparently been in use ever since.[2]

---

[1]The parcel has four levels, two of which are used exclusively for parking, one of which is used primarily for an obstacle course for the physical training of police recruits and secondarily for parking, and one for the classroom building at issue in this case.

[2]In February 1925 the Los Angeles Park Commission issued a temporary permit to the Los Angeles Police Department for the use of this portion of Elysian Park as a revolver range. Beginning May 23, 1930, this part of Elysian Park was zoned R4, an unlimited multiple and institutional residential zone. On August 22, 1935, the City board of parks commissioners granted to the Club a 25-year subsequently renewed

There are no residences near the classroom building and the building does not expand the existing capacity of the Police Academy. Its use alleviates overcrowded teaching conditions elsewhere in the academy. The aforementioned parcel on which the building is located, however, is in the R1 (single family residence) zone. Prior to the adoption of the hereafter-mentioned comprehensive zoning ordinance in 1946, this parcel was in the R4 zone.

DISCUSSION

A. *Standing of Petitioners*

■ Both respondent City and real party Club have challenged the standing of both petitioners, Grace E. Simons and Citizens' Committee to Save Elysian Park, to maintain this suit. We agree with the trial court, however, that Mrs. Simons' standing was inferentially adjudicated in the immediately prior lawsuit between these same three parties over exactly the same question at issue here—the legality of the City's approval of this use of a portion of the 3.78-acre parcel as the site of the classroom building. The judgment in that lawsuit granted Mrs. Simons hearings before the Commission and by administrative appeal, the city council on the precise issue before us.[3] This judgment has long been final. Consequently her standing to sue in this case may not now be challenged. (See *Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 810 [122 P.2d 892]; *Panos v. Great Western Packing Co.* (1943) 21 Cal.2d 636, 637 [134 P.2d 242].)[4]

■ The committee is in a different position. It apparently did not participate in the municipal administrative proceedings under review,

---

permit to operate in this area of Elysian Park. (See *Simons v. City of Los Angeles* (1977) 72 Cal.App.3d 924, 930 [140 Cal.Rptr. 484]; *Simons v. City of Los Angeles, supra,* 63 Cal.App.3d at p. 464.)

In 1972 article XVI, section 172, was added to the Los Angeles City Charter. This section transferred jurisdiction over the portion of the Police Academy lying within the park to the City department of public works "for use as public buildings and grounds, including use as police training facilities and related purposes."

[3]As authorized by rule 12(a) of the California Rules of Court, we have added to the record on appeal herein the judgment in that case.

[4]Mrs. Simons lives approximately one-third to one-half mile from the 3.78-acre parcel. The driving distance from her home to the parcel is estimated to be three-quarters to one mile. She cannot see the parcel from her home because two hills intervene. Nevertheless, under the hereafter quoted rationale of *Tustin Heights Assn. v. Bd. of Supervisors* (1959) 170 Cal.App.2d 619, 636-637 [339 P.2d 914]), Mrs. Simons probably has standing herein, entirely aside from res judicata.

and it was not a party in Mrs. Simons' original petition for writ of mandate herein.[5] In the first amended petition for writ of mandate herein, in which it was first named as a party, it is described as a nonprofit association whose prime purpose is to protect and maintain the unique environment, etc., of Elysian Park *and its environs*, and many of its members are alleged to be property owners residing on the very edge of the park and in close proximity to the 3.78-acre parcel owned by the Club. The trial court sustained the general demurrers of the Club and the City, which were based, at least in part, on their claim that the committee lacked standing to sue herein. Upon the committee's refusal to amend, the trial court orally directed a dismissal of this action as to it. But no such dismissal occurred.

Though we regard this issue as a close one, we hold, in view of the current trend toward relaxation of standing requirements for entities such as unincorporated associations, that the committee has standing to sue herein. As just stated, many of its members are alleged to be property owners residing on the very edge of Elysian Park and in close proximity to the site of the classroom building at issue. These people have an interest in the proper enforcement of land use ordinances affecting the quality of their neighborhood. (See *Aries Dev. Co.* v. *California Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534, 541 [122 Cal.Rptr. 315]; *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 122-124 [109 Cal.Rptr. 724].) As stated in the aforementioned *Tustin Heights Assn.* v. *Bd. of Supervisors, supra,* 170 Cal.App.2d at pages 636-637, "[t]he petitioners are the owners of real property within the zoned area and as such they are restricted in the use of their property by the zoning ordinance. Each of such property owners has an interest in the enforcement of the ordinance which is peculiar to him. If the ordinance is violated, he suffers special damage that is distinguishable from that suffered by the public at large. . . . If [they] were to be prevented from going to court to seek redress for an alleged violation of [the zoning ordinance] by . . . any public official, certainly there would be a denial of equal protection of the law. The private citizen[s] would be subject to the burdens and obligations of the [ordinance], yet denied the right to protect the integrity and character of [their] property by the same ordinance."

---

[5]The caption of this pleading reads: "GRACE E. SIMONS, individually and for and on behalf of Citizens' Committee to Save Elysian Park, an unincorporated association."

### B. *Merits*

■ As indicated at the outset of this opinion, the sole issue on the merits in this case is whether the City could properly approve the use of a portion of the 3.78-acre parcel as the site for the classroom building at issue on the ground that such use constituted a deemed approved, conditional use under sections 12.24 F and G of the Los Angeles Municipal Code.[6] Petitioners assert that, under the code, this change in the use of a portion of the parcel required instead the issuance of a conditional use permit therefor.[7]

We do not agree with petitioners. To demonstrate the basis of our disagreement, we must construe the pertinent sections of the code. Such construction involves, of course, only questions of law. (See *National Exhibition Co. v. City and County of San Francisco* (1972) 24 Cal. App.3d 1, 9 [100 Cal.Rptr. 757].) For zoning purposes, section 12.03 defines a "lot" in pertinent part as "[a] parcel of land occupied...by a use,. building or unit group of buildings and accessory buildings and uses,..."[8] All of the land used by the Police Academy—namely, the 21.464 acres within Elysian Park and the 3.78-acre parcel outside the park but directly adjoining the larger parcel, constitutes but 1 lot under this definition notwithstanding the fact that the 2 parcels comprising the lot are of necessity in different ownerships. Both, however, are occupied by a single use—namely, the Police Academy.

Section 12.24 F currently provides in pertinent part that any lot or portion thereof being *lawfully* used for any of the purposes enunciated in this section (one of which is "educational institutions" (§ 12.24 B (1)(e))) at the time the property is first classified in a zone where such

---

[6]All section references hereafter are to this code unless otherwise indicated.

[7]This assertion is supported by a finding of fact in the immediately prior lawsuit over the use at issue here. This finding states that "[a] structure of this type [relocatable classroom building] is not one of the uses permitted in the R1 single family zone by the Los Angeles City Code without obtaining a conditional use permit for its use." This finding of fact is actually, however, a conclusion of law. It is not binding on us, though, because the court in that case referred this issue of the correct procedure to be followed in authorizing the approval of this conditional use back to the municipal authorities for a redetermination thereof following further directed hearings and it is the outcome of those hearings which has given rise to the instant litigation.

[8]This same section defines in relevant part "accessory use" as a use which is customarily incidental to that of the main use of the land and which is located in the same zone or a less restrictive zone and on the same lot with the main use.

We note that section 12.24 C (1)(r) lists public parking areas as a conditional use which a zoning administrator is authorized to approve in an R zone.

use is not permitted by right shall be deemed to be an approved site for such conditional use which may be continued thereon.

Section 12.24 G (1) provides in relevant part that on any lot or portion thereof on which a conditional use is permitted pursuant to the section, new buildings may be erected, existing uses may be extended on an approved site and existing institutions may be expanded as permitted in subsection F, providing plans therefor are submitted to and approved by the Commission. This is precisely the procedure that was followed in this, case.

The parties do not dispute that the Police Academy existed on the 21.464-acre parcel within Elysian Park prior to June 1, 1946, when the City's comprehensive zoning ordinance, adding, among other things, the conditional use section—namely, section 12.24 (Ord. No. 90,500), took effect. Nor is there any dispute among them that prior to that date the 3.78-acre parcel was used by the Police Academy, primarily for parking and secondarily for training. Petitioners point out, however, that these uses of these parcels were not then lawful.

The City responds that at the time (1946) the Police Academy use was grandfathered in as a deemed approved conditional use, the predecessor of what is now section 12.24F did not contain the word "lawfully." That word was added by a 1951 amendment (Ord. No. 98,909), which did not contain any language indicating that it should have a retroactive effect. In such a situation it does not. (See *Neuber* v. *Royal Realty Co.* (1948) 86 Cal.App.2d 596, 614 [195 P.2d 501] [overruled in another aspect in *Porter* v. *Montgomery Ward & Co., Inc.* (1957) 48 Cal.2d 846, 850 (313 P.2d 854)].) Accordingly, we conclude that the City followed the correct procedure in this case in treating the use at issue—namely, the construction of the classroom building, as a deemed approved conditional use under sections 12.24 F and G of the Los Angeles Municipal Code.

## DISPOSITION

The judgment under appeal denying relief in mandamus is affirmed.

Allport, J., and Potter, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 27, 1980.