NORTHEAST CONCERNED CITIZENS, INC., Plaintiff v. CITY OF HICKORY, TRICOR DEVELOPMENT CORPORATION, Defendants

No. COA00-35

(Filed 1 May 2001)

**Zoning— community association—standing to challenge ordinance**
        The trial court properly granted summary judgment for defendants in an action by a nonprofit corporation challenging a rezoning ordinance where only 12 of plaintiff's 114 members/shareholders had a specific legal interest directly and adversely affected by the rezoning ordinance. The record did not contain any evidence that plaintiff has such an interest; therefore, plaintiff has standing only if all of its members/shareholders have the required interest.

        Judge Hudson concurring in the result.

Appeals by plaintiff from order dated 7 September 1999 by Judge James U. Downs in Catawba County Superior Court. Heard in the Court of Appeals 13 February 2001.

*Tate, Young, Morphis, Bach & Taylor, LLP, by Thomas C. Morphis, Paul E. Culpepper, and Valerie R. Adams, for plaintiff-appellant.*

*Gaither, Gorham & Crone, by John W. Crone, III, for defendant-appellee City of Hickory; and The Brough Law Firm, by Michael B. Brough and Robert E. Hornik, Jr., for defendant-appellee Tricor Development Corporation.*

GREENE, Judge.

Northeast Concerned Citizens, Inc. (Plaintiff) appeals an order filed 7 September 1999 granting summary judgment in favor of City of Hickory (the City) and Tricor Development Corporation (Tricor) (collectively, Defendants) and denying Plaintiff's motion for summary judgment.

Section 14.1 of the Hickory Zoning Ordinance (the Ordinance) provides for the establishment of Planned Development (PD) Districts. Zoning Ordinance, City of Hickory, N.C. § 14.1 (1993). PD Districts are zoning districts "established for specialized purposes where tracts, suitable in location, area[,] and character for the uses and structures proposed, are to be planned and developed on a unified basis." *Id.* The PD Districts permitted by Article 14 include PD Shopping Center Districts for community shopping centers. *Id.* § 14.8. The establishment of a PD District requires both the rezoning of the property at issue as a PD District and the approval of a Preliminary Development Concept Plan. The Preliminary Development Concept Plan consists of a plan for the specific use to be made of the property if the property is rezoned, and the plan must "include all data reasonably necessary for determining whether the proposed development meets the specific requirements and limitations, and the intent concerning a particular type of PD District." *Id.* § 14.5.1. To apply for the establishment of a PD District, a party must submit a rezoning request as well as a Preliminary Development Concept Plan to the Hickory Regional Planning Commission (Planning Commission). *Id.*

The record shows that in Spring 1998, Tricor filed an application with the Planning Commission to rezone approximately 29.5 acres of land located at the intersection of Springs Road and Kool Park Road

in Hickory (the property). At the time the application was submitted, a portion of the property was zoned residential, a portion of the property was zoned commercial, and a portion of the property was zoned PD Mobile Home Park. Tricor sought to have the property rezoned as a PD Shopping Center District for community shopping centers. Tricor's Preliminary Development Concept Plan stated its intent to construct a Wal-Mart on the property.

On 24 June 1998, the Planning Commission held a public hearing on Tricor's request to rezone the property. At the hearing, members of the public spoke both in opposition to and in favor of the rezoning request. At the conclusion of the hearing, the Planning Commission voted to recommend that the City Council for the City of Hickory (the City Council) deny Tricor's request to rezone the property.

On 21 July 1998, the City Council held a public hearing on the proposed rezoning of the property. At the conclusion of the hearing, the City Council approved Tricor's rezoning request by a 4-3 vote. On 18 August 1998, the rezoning ordinance was read for a second time, as required by the Hickory City Code. Subsequent to the reading, the rezoning ordinance was approved for a second time by a 4-3 vote and adopted by the City Council.

On 16 October 1998, Plaintiff filed a complaint in the Superior Court of Catawba County, alleging a cause of action against the City. Plaintiff's complaint stated, in pertinent part:

1. . . . Plaintiff . . . is a nonprofit corporation organized and existing under the laws of the State of North Carolina. The purpose for which the corporation was formed is to promote, preserve and protect the quality of living and land use in the City of Hickory . . . among said corporation[']s members and all residents of the City of Hickory . . . . In carrying out the purposes of the corporation this action has been instituted for the purpose of preserving the residential character of the neighborhood[,] the subject of this litigation. Many of the supporters and the people whose interest it represents are people who own property in the immediate vicinity of the proposed shopping center that is the subject of this litigation. Accordingly, the use and enjoyment of the properties owned by such people would be diminished and their property values would be lowered if the proposed shopping center were to be constructed, and therefore, such persons would suffer special damages that are different in degree and kind from

any adverse affects [sic] that may be suffered generally by other residents of the City of Hickory or Catawba County.

Plaintiff's complaint alleged that the City lacked authority to exercise zoning powers under N.C. Gen. Stat. § 160A-364 when it rezoned the property, the City Council acted with bias when it approved the rezoning of the property, the rezoning of the property was "unreasonable, arbitrary[,] and capricious," the City's actions were invalid because of Tricor's failure to "provide notice to all adjoining landowners of the [property]," and the rezoning of the property violated N.C. Gen. Stat. § 160A-382 (uniformity requirement throughout each district). Plaintiff requested the trial court "declare the zoning amendment adopted by the . . . City Council on August 18, 1998 to be invalid and of no effect."

In an order filed 1 February 1999, the trial court granted a motion by Tricor to intervene. The City and Tricor filed answers to Plaintiff's complaint, stating as a defense that Plaintiff lacked standing to bring an action to challenge the rezoning ordinance. Defendants then filed a motion for summary judgment dated 18 May 1999, stating "there is no genuine issue as to any material fact . . . and [Defendants] are entitled to judgment as a matter of law."

In an affidavit dated 24 June 1999, Walter D. Scharer (Scharer) stated that he "was one of the original founding members of [Plaintiff]." Scharer stated in his affidavit several ways in which the area surrounding the property would be affected if a Wal-Mart or any other shopping center were built on the property, including: there would be increases in traffic, crime, noise, and light, and "[t]he property values of the neighborhood and surrounding vicinity would decrease as a result of the increased commercialization of the neighborhood." Attached to Scharer's affidavit was an exhibit listing the names of 114 individuals who were present at the first meeting held by Plaintiff, and Scharer stated in his affidavit all of these individuals were accepted as members of Plaintiff at the meeting. In addition to Scharer's affidavit, Plaintiff submitted to the trial court affidavits of eleven other members of Plaintiff. These affidavits stated the same concerns as stated in Scharer's affidavit and included statements that if a Wal-Mart or a similar shopping center were built on the property, "[t]he property values of the neighborhood and surrounding vicinity would decrease as a result of the increased commercialization of the neighborhood." All of the parties who submitted affidavits stated they lived at addresses which are located in the neighborhood surrounding the property.

Tricor's First Set of Interrogatories to Plaintiff contained the following pertinent question: "Identify all persons who are members of [Plaintiff] and whom you contend own properties in such relationship to the property rezoned in this case that such persons would have standing as individuals to challenge this rezoning." In its response, Plaintiff listed the names of thirteen members.

Plaintiff filed a motion for summary judgment dated 1 July 1999. In an order dated 7 September 1999, the trial court denied Plaintiff's motion for summary judgment and granted summary judgment in favor of Defendants.

---

The dispositive issue is whether a corporation which does not have any legal interest in property affected by a zoning ordinance nevertheless has standing to challenge that zoning ordinance when the members/shareholders of the corporation have standing as individuals to challenge the zoning ordinance.

A zoning ordinance may be challenged by an action for declaratory judgment, *Taylor v. City of Raleigh*, 290 N.C. 608, 620, 227 S.E.2d 576, 583 (1976), or by writ of certiorari, N.C.G.S. § 160A-388(e) (1999). A party seeking to challenge a zoning ordinance, however, must have standing to bring such a challenge. Standing exists to challenge a zoning ordinance by a declaratory judgment action when the plaintiff "has a specific personal and legal interest in the subject matter affected by the zoning ordinance and . . . is directly and adversely affected thereby." *Taylor*, 290 N.C. at 620, 227 S.E.2d at 583. Similarly, standing exists to challenge a zoning ordinance by writ of certiorari when the plaintiff is an "aggrieved party," N.C.G.S. § 160A-388(e), *i.e.*, the plaintiff will suffer damages "distinct from the rest of the community" as a result of the zoning ordinance, *Heery v. Zoning Board of Adjustment*, 61 N.C. App. 612, 614, 300 S.E.2d 869, 870 (1983). Further, when a plaintiff seeks to challenge a zoning ordinance by a writ of certiorari, the plaintiff must allege special damages in its complaint. *Id.*; *Village Creek Prop. Owners' Ass'n, Inc. v. Town of Edenton*, 135 N.C. App. 482, 485-86, 520 S.E.2d 793, 795-96 (1999). It thus follows a corporation has standing to challenge a zoning ordinance in a declaratory judgment action if the corporation has a specific legal interest directly and adversely affected by the zoning ordinance; and a corporation has standing to challenge a zoning ordinance by writ of certiorari if the corporation is an "aggrieved party" under section 160A-388(e). Additionally, a corporation has standing to challenge a zoning ordinance in a declaratory judgment action if all

of the members/shareholders of the corporation have a specific legal interest directly and adversely affected by the zoning ordinance; and a corporation has standing to challenge a zoning ordinance by writ of certiorari if all of the members/shareholders of the corporation are "aggrieved parties" under section 160A-388(e).[1] *See Piney Mt. Neighborhood Assoc. v. Town of Chapel Hill*, 63 N.C. App. 244, 247, 304 S.E.2d 251, 253 (1983) (property association has standing to challenge city council's approval of special use permit by writ of certiorari when individual members of property association would "clearly have an interest in the property affected").

In this case, Plaintiff brought a declaratory judgment action against the City, in which it requested that the trial court "declare the zoning amendment adopted by the . . . City Council on August 18, 1998 to be invalid and of no effect."[2] Defendants raised as a defense to this action that Plaintiff lacked standing to challenge the rezoning ordinance, and Defendants filed a motion for summary judgment on the ground no genuine issue of material fact existed. The record does not contain any evidence Plaintiff has a specific legal interest directly and adversely affected by the rezoning ordinance; therefore, Plaintiff has standing to challenge the rezoning ordinance only if all of its members/shareholders have a specific legal interest directly and adversely affected by the rezoning ordinance. The record shows, at best, only twelve of Plaintiff's 114 members have such an interest. Accordingly, the trial court properly granted summary judgment in favor of Defendants on the ground Plaintiff did not have standing to challenge the rezoning ordinance.

1. The concurrence cites *River Birch Associates v. City of Raleigh*, 326 N.C. 100, 388 S.E.2d 538 (1990), for the proposition that all individual members of an association do not have to have individual standing for the association to have standing to bring an action on behalf of the members when the association itself does not have standing. *River Birch*, however, is distinguishable from the case *sub judice* because at issue in *River Birch* was an association's standing to bring an action for unfair or deceptive trade practices and not an action to challenge a zoning ordinance. *Id.* at 129-31, 388 S.E.2d at 355-56. As North Carolina has created a specific test for standing that is applicable to actions challenging zoning ordinances, *see Taylor*, 290 N.C. at 620, 227 S.E.2d at 583; N.C.G.S. § 160A-388(e), the more general standing requirement for associations stated in *River Birch* is not applicable to the case *sub judice*.

2. Plaintiff's complaint does not state whether it seeks review under the Declaratory Judgment Act, N.C.G.S. ch. 1, art. 26 (1999), or by petition for writ of certiorari under section 160A-388(e). Because Plaintiff's complaint seeks to have the rezoning ordinance declared "invalid and of no effect," we treat Plaintiff's action as an action for declaratory judgment. *See Ferguson v. Killens*, 129 N.C. App. 131, 138, 497 S.E.2d 722, 726 (type of action brought by plaintiff is determined based on nature of relief requested), *disc. review denied and appeal dismissed*, 348 N.C. 496, 510 S.E.2d 382 (1998).

Because Defendants were entitled to summary judgment on the ground Plaintiff lacked standing, we need not address Plaintiff's additional assignments of error.

Affirmed.

Judge McCULLOUGH concurs.

Judge HUDSON concurs in the result with separate opinion.

HUDSON, Judge, concurring in result.

I disagree with the conclusion that a corporation has standing to challenge a zoning action only if "*all* of the members/shareholders of the corporation" would have individual standing to bring the action (emphasis added). Further, I believe that pertinent authority, including that cited in the majority opinion, compel a different conclusion on this issue. However, for reasons discussed below, I concur in the result reached by the majority.

In support of its holding, the majority cites *Piney Mt. Neighborhood Assoc. v. Town of Chapel Hill*, 63 N.C. App. 244, 247, 304 S.E.2d 251, 253 (1983). In *Piney Mountain*, this Court held that a corporate petitioner which "has no property interest, but represents individuals who live in the affected area and who potentially will suffer injury" from a zoning action, has standing to challenge that action on behalf of its members. *Id.* The decision does not specify that *all* of the individual members of the neighborhood association were required to have individual standing in order for the association to have standing. Rather, it notes "the trend in other jurisdictions toward relaxing strict procedural requirements involving standing" and then proceeds to follow this trend by holding that the association involved did have standing. *Id.*

In *River Birch Associates v. City of Raleigh*, 326 N.C. 100, 388 S.E.2d 538 (1990), the North Carolina Supreme Court addressed the standing of a homeowner's association to bring an unfair and deceptive trade practices suit on behalf of its members. The Court found: "To have standing the complaining association *or one of its members* must suffer some immediate or threatened injury." *Id.* at 129, 388 S.E.2d at 555 (emphasis added). As such, the Court adopted the federal rule for associational standing set forth in *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 342-43, 53 L. Ed. 2d 383, 393-94 (1977). *River Birch* sets forth the following test:

[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members of the lawsuit.

326 N.C. at 130, 388 S.E.2d at 555 (quoting *Hunt*, 432 U.S. at 343, 53 L. Ed. 2d at 394). Thus, even though *River Birch* holds that an association's "members" must have standing in their own right in order for the association to have standing, it explains that not *all* of the members must have individual standing. For the same reason, I believe that *Piney Mountain's* language to the effect that a corporate petitioner has standing to challenge a zoning action if it "represents individuals" who have standing, does not mean that *all* of the members of the association are required to have individual standing.

I agree with the majority that North Carolina has developed by statute and case law certain tests for determining standing in zoning actions. *See Taylor v. City of Raleigh*, 290 N.C. 608, 620, 227 S.E.2d 576, 583 (1976); N.C.G.S. § 160A-388(e) (1999). However, *Taylor* delineates the basis for an individual to have standing to bring a zoning challenge; it does not address associational standing. While *River Birch* does not involve a zoning action, it is instructive as to *how many* of an association's members must have individual standing (under tests such as *Taylor* and N.C.G.S. § 160A-388(e)) in order to give the association standing to participate in litigation. In fact, *River Birch* cites *Piney Mountain*, a zoning case similar to the one before us, as an example of an association having standing to seek relief on behalf of its members. 326 N.C. at 130, 388 S.E.2d at 555.

This judge has been able to find no case in any jurisdiction which mandates that every single one of the individual members of an association must have standing on their own before an association itself may have standing to bring a zoning action. Rather, there are many cases which have found associational standing in zoning cases based upon the individual standing of one or several members. *See, e.g., Simons v. City of Los Angeles*, 161 Cal. Rptr. 67, 69 (Cal. Ct. App., 2d Distr. 1979) (standing found when "many" of association's members owned property in close proximity to site proposed to be rezoned); *Life of the Land v. Land Use Com'n*, 594 P.2d 1079, 1082 (Haw. 1979) (three of organization's members lived in immediate vicinity of land proposed to be rezoned; other members used land for recreation); *Ecology Action v. Van Cort*, 417 N.Y.S.2d 165, 169 (N.Y. Sup. Ct. 1979)

(association given standing had over 40 active members, several of whom lived near the proposed development); *1000 Friends of Oregon v. Multnomah County, Etc.*, 593 P.2d 1171, 1175 (Or. Ct. App. 1978) (organization had standing where one of its members had individual standing); *Save a Valuable Environment v. Bothell*, 576 P.2d 401, 404 (Wash. 1978) (a non-profit association has standing if "one or more of its members are specifically injured").

A seminal state court decision examining associational standing in zoning cases is *Douglaston Civic Association v. Galvin*, 324 N.E.2d 317, 321 (N.Y. 1974), which sets forth the following factors in determining whether an organization has standing:

> (1) the capacity of the organization to assume an adversary position, (2) the size and composition of the organization as reflecting a position fairly representative of the community or interests which it seeks to protect[,] (3) the adverse effect of the decision sought to be reviewed on the group represented by the organization as within the zone of interests sought to be protected[, and (4) whether] full participating membership in the representative organization [is] open to all residents and property owners in the relevant neighborhood.

*Douglaston* discusses the policy implications behind its holding:

> It should be readily apparent that a person desiring relaxation of zoning restrictions—such as a change from residential to business—has little to lose and much to gain if he can prevail. He is not reluctant to spend money in retaining special counsel and real estate appraisers if it will bring him the desired result. The individual owner of developed land in the neighborhood, on the other hand, may not, at the time, realize the impact the proposed change of zoning will have on his property, or, realizing the effect, may not have the financial resources to effectively oppose the proposed change. . . . By granting neighborhood and civic associations standing in such situations, the expense can be spread out over a number of property owners putting them on an economic parity with the developer.

*Id.* at 320.

One practical effect of the majority's opinion may be to drastically curtail North Carolina citizens' ability to challenge zoning changes in the areas where they live. As *Douglaston* recognized, few people can afford to bring such a lawsuit as individuals. However,

under the majority's decision, if citizens create a neighborhood association, they will have to carefully scrutinize each and every person who joins out of concern that if one person who does not have individual standing becomes a member, the entire group will lose standing to carry out one of its most important purposes. Such need for scrutiny might not be so harsh if a bright-line rule for determining when an individual has standing existed. In reality, whether a person has individual standing to challenge a zoning action is a subjective inquiry and can be a difficult determination for attorneys and judges, let alone lay people, to make. In this same vein, I also do not favor requiring our trial courts to engage in a full-scale inquiry regarding the individual standing of every member of an association seeking to challenge a zoning decision.

In conclusion, I believe our Supreme Court has already spoken to the requirements for associational standing in this state in *River Birch* and would require the trial court to apply the test set forth in *River Birch* to determine whether the association in this case has standing.

I must concur in the result reached by the majority, however, in that I do not believe plaintiff can prevail on the merits of its case. Plaintiff essentially makes two arguments before this Court: first, that Hickory's ordinance regarding the approval of Planned Development Districts is unduly vague; second, that certain members of the City Council were biased in favor of the rezoning before they heard and voted on the matter. Plaintiffs did not assert the vagueness of the ordinance in the trial court, and they may not present this issue for the first time on appeal. N.C.R. App. P. 10(b)(1); *River Birch Associates*, 326 N.C. at 131, 388 S.E.2d at 556.

Furthermore, the City Council, in voting to rezone the subject property as a Planned Development District, was acting in a legislative capacity. *See Brown v. Town of Davidson*, 113 N.C. App. 553, 556, 439 S.E.2d 206, 208 (1994) (zoning decisions are legislative acts). A predisposition to vote a certain way on a legislative matter does not amount to a due process violation. *Id.* I do not believe plaintiffs have demonstrated the City Council acted in an arbitrary and capricious manner in approving the subject rezoning.