**STATE EMPLOYEES ASS'N OF N.C., INC. v. STATE**

[154 N.C. App. 207 (2002)]

STATE EMPLOYEES ASSOCIATION OF NORTH CAROLINA, INC., Plaintiff v. STATE OF NORTH CAROLINA; MICHAEL F. EASLEY, Governor of North Carolina; EDWARD RENFROW, State Controller of North Carolina; and DAVID T. McCOY, State Budget Officer of North Carolina, Defendants

No. COA01-1568

(Filed 3 December 2002)

### 1. Injunction— temporary restraining order hearing—jurisdiction to dismiss lawsuit in entirety

The trial court did not err by denying plaintiff state employees association's motion for a temporary restraining order (TRO) and by dismissing its complaint for declaratory judgment seeking to enjoin the State and certain of its officials from redirecting funds allocated to the State's retirement system to attempt to balance the budget rather than to fund the retirement systems even though plaintiff contends the trial court lacked jurisdiction to dismiss the lawsuit in its entirety at the TRO hearing, because: (1) neither of the grounds given by the trial court, including a Rule 12(b)(6) motion based on lack of jurisdiction or a Rule 12(b)(1) motion for lack of subject matter jurisdiction, is on the merits; and (2) a lack of jurisdiction can be raised at any time including by the trial court ex mero motu without any notice being required.

### 2. Declaratory Judgments— standing—association

The trial court did not err by concluding that plaintiff state employees association lacked standing to maintain a declaratory judgment action seeking to enjoin the State and certain of its officials from redirecting funds allocated to the State's retirement system to attempt to balance the budget rather than to fund the retirement systems.

Judge Tyson concurring in part and dissenting in part.

Appeal by plaintiff from order entered 29 May 2001 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 11 September 2002.

*State Employees Association of North Carolina, Inc., by General Counsel Thomas A. Harris, for plaintiff appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorneys Norma S. Harrell and Alexander McC. Peters and Assistant Attorney General Robert M. Curran, for defendant appellees.*

*Blanchard, Jenkins, Miller & Lewis, P.A., by E. Hardy Lewis, Amicus Curiae North Carolina Conference of the American Association of University Professors.*

McCULLOUGH, Judge.

Plaintiff State Employees Association of North Carolina, Inc., (SEANC) appeals from an order denying its motion for a temporary restraining order and dismissing its complaint for declaratory judgment against defendants the State of North Carolina, Governor Michael Easley, State Controller Edward Renfrow, and State Budget Officer David McCoy, entered 29 May 2001.

SEANC is a nonprofit corporation that, according to its complaint, has approximately 58,000 active members, of whom approximately 46,000 are current employees of the State of North Carolina and approximately 12,000 are retired State employees. Active members of SEANC are defined as being limited to "current and retired employees of the State of North Carolina and/or persons having membership in or eligibility for membership in the following systems, Teachers' and State Employees' Retirement System of North Carolina, Consolidated Judicial Retirement System of North Carolina, and Legislative Retirement System." Plaintiff alleges that they are bringing this lawsuit on behalf of its vested members. Vested members are those active members who have five (5) years of state service and have a vested right in their retirement account. *See Bailey v. State of North Carolina*, 348 N.C. 130, 500 S.E.2d 54 (1998).

In pursuing this lawsuit, plaintiff SEANC is seeking to enjoin the State and certain of its officials from redirecting funds allocated to the State's retirement systems. The North Carolina General Assembly has statutorily created retirement systems for respective State employees. Three in particular are involved here.

Created in 1941 and located in N.C. Gen. Stat. §§ 135-1 to -18.8, the "Retirement System for Teachers and State Employees" was established "for the purpose of providing retirement allowances and other benefits under the provisions of this Chapter for teachers and State employees of the State of North Carolina." N.C. Gen. Stat. § 135-2 (2001).

Codified in N.C. Gen. Stat. §§ 135-50 to -76 in 1973, the "Consolidated Judicial Retirement Act" was established for the purpose of improving "the administration of justice by attracting and retaining the most highly qualified talent available within the State to the positions of justice and judge, district attorney and solicitor, and clerk of superior court, within the General Court of Justice[,]" N.C. Gen. Stat. § 135-50(b) (2001), by "providing retirement allowances and other benefits under the provisions of this Article for justices and judges, district attorneys, and clerks of superior court of the General Court of Justice of North Carolina, and their survivors." N.C. Gen. Stat. § 135-54 (2001).

The "Legislative Retirement System" was created in 1983 and is located in N.C. Gen. Stat. §§ 120-4.8 to -4.31 (2001).

These retirement systems are funded by both employee and State, or employer, contributions. *See* N.C. Gen. Stat. §§ 135-8; 135-68, -69; 120-4.19, -20 (2001). As plaintiff alleges, these systems provide "for a systematic method of funding of the respective retirement system with employee contributions computed as a set percentage . . . of the employees' salaries, and with systematic employer contributions in accordance with formulas mandated by the Retirement Statutes, which include calculations by an actuary based on the actuarial valuation of liabilities of the Retirement Systems."

It was with respect to these State contributions that the "Appropriation Act of 2000" purported to set aside certain percentages of the covered salaries for the 2000-2001 fiscal year. 2000 N.C. Sess. Laws ch. 67, § 26.19(a).

It is worth noting Article V, Section 6 of the North Carolina Constitution, titled "Inviolability of sinking funds and retirement funds." Subsection 2 of this provision provides:

*Retirement funds.* Neither the General Assembly nor any public officer, employee, or agency shall use or authorize to be used any part of the funds of the Teachers' and State Employees' Retirement System or the Local Governmental Employees' Retirement System for any purpose other than retirement system benefits and purposes, administrative expenses, and refunds; except that retirement system funds may be invested as authorized by law, subject to the investment limitation that the funds of the Teachers' and State Employees' Retirement System and the Local Governmental Employees' Retirement System shall not be

applied, diverted, loaned to, or used by the State, any State agency, State officer, public officer, or public employee.

N.C. Const. art V, § 6(2). This version of Section (2) was adopted in 1969, but is similar to the provisions of Article II, Section 31, of the 1868 North Carolina Constitution, as adopted in 1950.

On the other hand, the North Carolina Constitution in Article III, Section 5 details the duties of the Governor. As to the budget of the State, it provides the following:

*Budget.* The Governor shall prepare and recommend to the General Assembly a comprehensive budget of the anticipated revenue and proposed expenditures of the State for the ensuing fiscal period. The budget as enacted by the General Assembly shall be administered by the Governor.

The total expenditures of the State for the fiscal period covered by the budget shall not exceed the total of receipts during that fiscal period and the surplus remaining in the State Treasury at the beginning of the period. *To insure that the State does not incur a deficit for any fiscal period, the Governor shall continually survey the collection of the revenue and shall effect the necessary economies in State expenditures, after first making adequate provision for the prompt payment of the principal of and interest on bonds and notes of the State according to their terms, whenever he determines that receipts during the fiscal period, when added to any surplus remaining in the State Treasury at the beginning of the period, will not be sufficient to meet budgeted expeditures.* This section shall not be construed to impair the power of the State to issue its bonds and notes within the limitations imposed in Article V of this Constitution, nor to impair the obligation of bonds and notes of the State now outstanding or issued hereafter.

N.C. Const. art. III, § 5(3) (emphasis added). Pursuant to this power, defendant Governor Easley issued Executive Order No. 3, entitled "Budget Administration," to insure that the State did not incur a deficit for the 2000-2001 fiscal year. This order detailed the distinct possibility that a deficit was impending in the fiscal year. It also commanded the Office of State Budget, Planning and Management (OSBPM) to take certain actions to insure that the State did not suffer a deficit. One of the commands was as follows:

Section 8. The Office of the State Controller, as advised by the State Budget Officer, is directed to receive the employer portion of retirement contributions for all State funded retirement systems and to escrow such funds in a special reserve as established by OSBPM. Before taking such action, OSBPM is directed to confirm with the State Treasurer that such action will not impair the actuarial integrity of the state retirement system. Return of all such receipts shall be made to the retirement system, if possible, after determination that such funds are not necessary to address the deficit.

The amount that OSBPM actually put in escrow is estimated to be $151,000,000.00.

As it became apparent to plaintiff SEANC that defendants were indeed going to use the appropriated employer contributions held in escrow to attempt to balance the budget rather than to fund the retirement systems, plaintiff filed this action on 22 May 2001. In its verified complaint, plaintiff sought a declaratory judgment on four possible grounds: (1) that contracts exist between defendants and the members of the retirement systems to fund those systems in accordance with the systematic funding methods mandated by the retirement systems, and that defendants' actions had breached those contracts; (2) that the Executive Order and other actions of defendants, both taken and threatened, violate Article V, Section 6(2) of the North Carolina Constitution; (3) defendants lack authority under Article III, Section 5(3) of the North Carolina Constitution to withhold the appropriated retirement funds; (4) the contractual rights of the members of the retirement systems to have the systems funded are property rights, and the Executive Order and other actions of defendants constitute a taking of property from those members without due process of law in violation of the Fourteenth Amendment to the U.S. Constitution and other than by the law of the land in violation of Article I, Section 19 of the North Carolina Constitution.

Plaintiff's complaint sought a preliminary injunction to preserve the *status quo* while the action was pending and ultimately a permanent injunction compelling defendants to pay into the retirement systems all employer contributions to the systems withheld by them under the Executive Order or otherwise. In addition to its complaint, plaintiff also filed a motion for a temporary restraining order (TRO) pursuant to Rule 65(b) of the North Carolina Rules of Civil Procedure on the same day. This motion alleged that

"[t]he threatened actions of Defendants will cause immediate and irreparable injury to Plaintiff's members and all other current and retired State employees."

A hearing on plaintiff's motion for TRO was held on 23 May 2001. As to the TRO, the trial court found as fact that plaintiff had failed to demonstrate that it or its members will suffer any irreparable harm if injunctive relief is not granted, and that they had presented no allegation of actual harm to it or its members. Accordingly, the trial court made conclusions of law to the same effect holding that plaintiff could not prevail on the merits of the action, and thus ordered that the TRO motion be denied.

The trial court also made findings of fact that plaintiff SEANC was the only plaintiff to this action, that SEANC has neither alleged nor shown by any evidence that it is a party to or third-party beneficiary of the alleged contracts, and that all of the parties to the contracts are not before the trial court in the action. The trial court then made conclusions of law that plaintiff lacked standing to bring its declaratory judgment action as the relief sought was not available under the Act, that the suit lacked the necessary parties to issue a declaration of rights, plaintiff had failed to demonstrate that an actual and justiciable controversy existed or is unavoidable, that the trial court lacked subject matter jurisdiction because plaintiff had no standing, and that this suit was subject to dismissal under Rule 12(b)(6). Thus, the trial court ordered that the entire complaint be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted and pursuant to Rule 12(h)(3) for lack of subject matter jurisdiction. These orders were entered on 29 May 2001. Plaintiff appeals.

Plaintiff argues on appeal that (1) the trial court lacked jurisdiction to dismiss the lawsuit at the hearing on plaintiff's motion for TRO; (2) the trial court's order of dismissal at the TRO hearing violated plaintiff's right to proper notice and a fair hearing; (3) the trial court had subject matter jurisdiction of the action below because plaintiff's allegations demonstrate that its members had suffered actual harm and plaintiff had standing to sue on their behalf; (4) plaintiff's complaint states proper claims for declaratory judgment or, in the alternative, proper claims under other legal theories which the trial court should have recognized; (5) plaintiff's verified complaint presents a justiciable controversy; and (6) all necessary parties were present in the action below.

For the reasons set forth herein we affirm the actions of the trial court and the dismissal of this suit.

## I.

[1] Plaintiff's first argument is that the trial court lacked jurisdiction to dismiss the lawsuit in its entirety at the hearing on their motion for TRO. Plaintiff argues that the merits of an action cannot be considered at such a hearing because the trial court has jurisdiction only to consider the TRO. *See Register v. Griffin*, 6 N.C. App. 572, 575, 170 S.E.2d 520, 522-23 (1969). Further, plaintiff cites cases which hold that a dismissal pursuant to Rule 12(b)(6), unless otherwise specified, is a dismissal on the merits.

Defendant argues that the trial court had jurisdiction to rule the way it did, and we agree. "A lack of standing may be challenged by motion to dismiss for failure to state a claim upon which relief may be granted." *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 337, 525 S.E.2d 441, 445 (2000). While generally a Rule 12(b)(6) motion is on the merits, one based on lack of jurisdiction is not.

> Rule 41(b) of the North Carolina Rules of Civil Procedure provides the basis for concluding that dismissal under Rule 12(b)(6) is an adjudication on the merits, and therefore that 12(b)(6) dismissal bars subsequent relitigation of the same claim. Rule 41(b) provides in relevant part that
>
> > [u]nless the court in its order for dismissal otherwise specifies, a dismissal under this section and *any dismissal* not provided for in this rule, *other than a dismissal for lack of jurisdiction*, for improper venue, or for failure to join a necessary party *operates as an adjudication upon the merits*.

*Cline v. Teich*, 92 N.C. App. 257, 264, 374 S.E.2d 462, 466 (1988) (citations omitted) (emphasis added).

Also in *Cline*, it is explained that a dismissal pursuant to Rule 12(b)(1) is not on the merits. *Id.* at 263-64, 374 S.E.2d at 466. Neither of the grounds given by the trial court, Rule 12(b)(6) for failure to state a claim because of lack of standing, nor Rule 12(b)(1) for lack of subject matter jurisdiction because of lack of standing, are on the merits. A lack of jurisdiction can be raised at any time including by the trial court *ex mero motu*, notice not being required. N.C. Gen. Stat. § 1A-1, Rule 12(h)(3) (2001). Thus, the trial court did not exceed

its authority at the TRO hearing. Accordingly, these assignments of error are overruled.

## II.

[2] Resolution of this appeal requires this Court to determine if plaintiff has standing to maintain this action in its present form. As plaintiff is an association seeking to represent its members in this lawsuit, the proper standard for analysis of the standing issue is set forth by our Supreme Court in *River Birch Associates v. City of Raleigh*, 326 N.C. 100, 388 S.E.2d 538 (1990):

> "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

*River Birch*, 326 N.C. at 130, 388 S.E.2d at 555 (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 53 L. Ed. 2d 383, 394 (1977)). The Supreme Court in *River Birch* stated that "[t]o have standing the complaining association or one of its members must suffer some immediate or threatened injury." *Id.* at 129, 388 S.E.2d at 555. Further, "[w]hen an organization seeks declaratory or injunctive relief on behalf of its members, 'it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.' " *Id.* at 130, 388 S.E.2d at 555 (quoting *Warth v. Selding*, 422 U.S. 490, 515, 45 L. Ed. 2d 343, 364 (1975)).

Since *River Birch* was decided, our Court has had several occasions to consider this issue. In doing so, there appears, as the arguments by the parties point out, to be a disagreement as to the interpretation of the first prong of the *River Birch* test. In particular, the question pertains to whether or not this prong, which requires that "its members would otherwise have standing to sue in their own right," requires every member of the association to have standing or allows an association to have standing even though not all members are immediately harmed by the activity complained of.

In *Landfall Group v. Landfall Club, Inc.*, 117 N.C. App. 270, 450 S.E.2d 513 (1994), this Court was presented with the issue of whether plaintiff, a non-profit association, made up of members of defendant Club, had standing to bring a declaratory judgment action where one

member of plaintiff did not belong to defendant Club, and thus did not have standing on his own to sue. *Id.* at 272, 450 S.E.2d at 515. Plaintiff claimed standing as an association, and this Court proceeded to apply the *River Birch* test. There the Court stated that:

> Under the first prong of the *Hunt* test, an individual member has standing to sue in his own right if he can demonstrate a "distinct and palpable injury" likely to be redressed by granting the requested relief.

*Landfall Group*, 117 N.C. App. at 272-73, 450 S.E.2d at 515 (quoting *Valley Forge College v. Americans United*, 454 U.S. 464, 488, 70 L. Ed. 2d 700, 719 (1982)). Applying this to the facts, the Court noted that in support of defendant's motion for summary judgment, which was granted, defendant produced an affidavit that tended to show that one of the members of plaintiff was not a member of defendant Club:

> Based on this evidence, [one member] cannot demonstrate that he has a "distinct and palpable injury" likely to be remedied by granting the relief requested by plaintiff; therefore, plaintiff has failed to meet the first prong of the *Hunt* test for representational standing.

*Id.* at 273, 450 S.E.2d at 515. Because plaintiff was unable to rebut this evidence, summary judgment in favor of defendant on the basis of standing was affirmed.

Recently, this Court commented on this situation in *Northeast Concerned Citizens, Inc. v. City of Hickory*, 143 N.C. App. 272, 545 S.E.2d 768, *disc. review denied*, 353 N.C. 526, 549 S.E.2d 220 (2001). *Northeast* dealt with the issue of "whether a corporation which does not have any legal interest in property affected by a zoning ordinance nevertheless has standing to challenge that zoning ordinance when [some] members/shareholders of the corporation have standing as individuals to challenge the zoning ordinance." *Id.* at 276, 545 S.E.2d at 771. *Northeast* noted that special rules apply to challenging a zoning ordinance. Essentially, zoning ordinances may be challenged by individuals in an action for declaratory judgment or a writ of certiorari under N.C. Gen. Stat. § 160A-388(e) (2001). Individuals have standing under either if they have a specific legal interest that is directly and uniquely affected by the zoning ordinance (an aggrieved party under § 160A-388(e)). Therefore, this Court declared that a corporation has standing in the same manner, if *all* of the mem-

bers/shareholders of the corporation were so situated. *Id.* at 276-77, 545 S.E.2d at 771-72.

While *Northeast Concerned Citizens* applied specific rules unique to the zoning ordinance area, that Court sowed confusion when it stated that other more general rules did not apply. The majority did this in a footnote, apparently addressing concerns of the concurrence:

> The concurrence cites *River Birch Associates v. City of Raleigh*, 326 N.C. 100, 388 S.E.2d 538 (1990), for the proposition that all individual members of an association do not have to have individual standing for the association to have standing to bring an action on behalf of the members when the association itself does not have standing. *River Birch*, however, is distinguishable from the case *sub judice* because at issue in *River Birch* was an association's standing to bring an action for unfair or deceptive trade practices and not an action to challenge a zoning ordinance. *Id.* at 129-31, 388 S.E.2d at 355-56. As North Carolina has created a specific test for standing that is applicable to actions challenging zoning ordinances, *see Taylor*, 290 N.C. at 620, 227 S.E.2d at 583; N.C.G.S. § 160A-388(e), *the more general standing requirement for associations stated in River Birch is not applicable to the case sub judice.*

*Id.* at 277, 545 S.E.2d at 772 (emphasis added).

The concurrence cited *River Birch* for associational standing, with particular emphasis on the quote that, "[t]o have standing the complaining association *or one of its members* must suffer some immediate or threatened injury." *Id.* at 278, 545 S.E.2d at 773. It explains:

> Thus, even though *River Birch* holds that an association's "members" must have standing in their own right in order for the association to have standing, it explains that not *all* of the members must have individual standing.

*Id.* at 279, 545 S.E.2d at 773 (emphasis added).

While the *Northeast Concerned Citizens* footnote created some confusion, it is not binding as the statement was not the holding of that case. *Landfall* is the only case that the courts of this State have decided on the issue of associational standing subsequent to *River Birch*. The holding from that case is binding on this panel, as one

panel cannot overrule another. *See In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (stating "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court").

Thus even if we were inclined to follow the more liberal rule of other states or the federal courts, which have allowed associational standing when some of its members had standing, we cannot. *See 1000 Friends of Oregon v. Multnomah County, Etc.*, 39 Or. App. 917, 593 P.2d 1171 (1979). Indeed, the United States Supreme Court seems to hold that some lesser number of impacted members is sufficient to allow associational standing:

> [T]o justify any relief the association must show that it has suffered harm, or that one or more of its members are injured. *E.g., Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L. Ed. 2d 636 (1972). But, apart from this, whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind. *E.g., National Motor Freight Assn. v. United States*, 372 U.S. 246, 83 S.Ct. 688, 9 L. Ed. 2d 709 (1963).

*Warth v. Seldin*, 422 U.S. at 515, 45 L. Ed. 2d at 364; *see also River Birch*, 326 N.C. at 130, 388 S.E.2d at 555.

Affirmed.

Judge BRYANT concurs.

Judge TYSON concurs in part and dissents in part.

TYSON, Judge concurring in part, dissenting in part.

I concur with Part I of the majority's opinion holding that the trial court had proper jurisdiction to dismiss the lawsuit in its entirety at the hearing on plaintiff's motion for a temporary restraining order

(TRO). I respectfully dissent from Part II of the majority's opinion which affirms that portion of the trial court's order which held that plaintiff State Employees Association of North Carolina (SEANC) did not have standing to bring an action and which dismissed plaintiff's action.

## I. Standing

Plaintiff alleged in its complaint:

SEANC brings this action on behalf of its active members who are vested members of any of the [retirement] systems. . . . SEANC has standing to maintain this lawsuit. As more fully set forth below, the active SEANC members who are vested members of the Retirement Systems are suffering and will continue to suffer irreparable harm to their contractual and constitutional rights in the Retirement Systems as a result of the actions, both past and threatened, of the defendants unless the defendants are restrained. Thus, all such members would have standing to maintain a lawsuit such as this one on their own behalf.

The proper standard to analyze whether an association has standing is set forth by our Supreme Court in *River Birch Associates v. City of Raleigh*, 326 N.C. 100, 388 S.E.2d 538 (1990):

[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*River Birch*, 326 N.C. at 130, 388 S.E.2d at 555 (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 53 L. Ed. 2d 383, 394 (1977)). Justice Meyer stated, "[t]o have standing *the complaining association or one of its members* must suffer some immediate or threatened injury." *Id.* at 129, 388 S.E.2d at 555. (Emphasis supplied). The *River Birch* Court found the association had standing for the declaratory judgment claim but not for the tort claim because individual members of the association may suffer damages in differing amounts.

*River Birch* adopted the standard set forth in the case of *Warth v. Seldin*, 422 U.S. 490, 45 L. Ed. 2d 343 (1975). The U.S. Supreme Court stated that for an association to have standing, "[t]he associa-

tion must allege *that its members, or any one of them,* are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth,* 422 U.S. at 511, 45 L. Ed. 2d. at 362 (emphasis supplied). The Court further stated:

> whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.

*Warth,* 422 U.S. at 515, 45 L. Ed. 2d at 364.

The clear language of *River Birch* and *Warth* does not require a threat of immediate injury to each and every individual member of the association in order for the association to have standing.

The majority's opinion, relying upon *Landfall Group v. Landfall Club, Inc.,* 117 N.C. App. 270, 450 S.E.2d 513 (1994), would require each and every member of an association to have individual standing in order for the association to have standing. This requirement would obliterate associational standing and is inconsistent with the plain language of *River Birch.* "[O]ne of its members must suffer some immediate or threatened injury." *River Birch,* 326 N.C. at 129, 388 S.E.2d at 555 (citing *Hunt,* 432 U.S. at 342, 53 L. Ed. 2d at 393).

*Landfall* relied upon *Valley Forge College v. Americans United,* 454 U.S. 464, 488, 70 L. Ed. 2d. 700, 719 (1982) to hold that each member of the association had to show a "distinct and palpable injury" to have standing to sue. *Landfall,* 117 N.C. App. at 273, 450 S.E.2d at 515.

*Valley Forge* required a distinct and palpable injury to each association member for the association to make an establishment clause challenge and meet the requirements of Art. III of the U.S. Constitution. *Valley Forge,* 454 U.S. at 488-89, 70 L. Ed. 2d at 719-20. The facts of *Valley Forge* were specific, and its holding is narrow. Its rationale for Art. III standing is inapplicable to the facts in *Landfall.*

The majority's assertion that *Landfall* controls the result here is questionable in light of the more recent cases from this Court of

*Northeast Concerned Citizens, Inc. v. City of Hickory*, 143 N.C. App. 272, 545 S.E.2d 768 (2001) and *Creek Pointe Homeowner's Ass'n v. Happ*, 146 N.C. App. 159, 552 S.E.2d 220 (2001), *disc. review denied*, 356 N.C. 161, 568 S.E.2d 191 (2002).

The concurring opinion in *Northeast* expressed concern that the majority's opinion overreached by stating "that a corporation has standing to challenge a zoning action only if '*all* of the members/shareholders of the corporation' would have individual standing to bring the action." *Northeast*, 143 N.C. App. at 278, 545 S.E.2d at 772. To address the concerns of the concurrence, the majority acknowledged in a footnote the holding of *River Birch* but distinguished its applicability to the facts in *Northeast* which dealt with zoning regulations. *Id.* at 277, 545 S.E.2d at 772. ("As North Carolina has created a specific test for standing that is applicable to actions challenging zoning ordinances, . . . the more general standing requirement for associations stated in *River Burch* is not applicable to the case *sub judice*.")

More recently, this Court in *Creek Pointe Homeowner's Ass'n v. Happ*, 146 N.C. App. 159, 552 S.E.2d 220 (2001), *disc. rev. denied*, 356 N.C. 161, 568 S.E.2d 191 (2002), reversed the trial court's dismissal of a homeowner's association's claim for lack of standing and held "that the association ha[d] standing to pursue claims against [the] defendant on its own behalf." *Creek Pointe*, 146 N.C. App. at 169, 552 S.E.2d at 227-28.

## II.  Conclusion

While the majority finds this Court bound by precedent in *Landfall*, I would hold that *River Birch* is controlling precedent at bar. *See Rogerson v. Fitzpatrick*, 121 N.C. App. 728, 732, 468 S.E.2d 447, 450 (1996) (citing *Dunn v. Pate*, 106 N.C. App. 56, 60, 415 S.E.2d 102, 104 (1992), *rev'd on other grounds*, 334 N.C. 115, 431 S.E.2d 178 (1993) ("It is elementary that this Court is bound by holdings of the Supreme Court."); *See also Brundage v. Foye*, 118 N.C. App. 138, 141, 454 S.E.2d 669, 671 (1995) ("[O]ur responsibility is to follow established precedent set forth by our Supreme Court.")

For the foregoing reasons, I respectfully dissent.