GILLIS v. ARRINGDALE.

(Filed May 3, 1904).

1. CANCELLATION OF INSTRUMENTS—*Deeds—Fraud—Damages.*

In an action to cancel a deed for the fraud of the grantee, the grantor in this case is entitled to such damages as the grantee might have done to the land.

2. CANCELLATION OF INSTRUMENTS—*Deeds—Damages—Improvements.*

In an action for the cancellation of a deed, the grantee is entitled to reduce the damage to the land by the enhanced value of the same from improvements placed thereon.

3. CANCELLATION OF INSTRUMENTS—*Issues—Damages—Consideration.*

In this suit for the cancellation of a conveyance and for damages, an issue as to what consideration defendant agreed to pay for the land was properly submitted.

4. CANCELLATION OF INSTRUMENTS—*Pleadings—Verdict—Reformation of Instruments—Deeds—Consideration.*

Where the complaint alleges and the verdict finds that the consideration in a deed was, by fraud or mistake, less than the amount agreed upon, the judgment should be for the reformation and not the cancellation of the deed.

GILLIS *v.* ARRINGDALE.

5. CANCELLATION OF INSTRUMENTS—*Pleadings—Amendments—Verdict—Reformation of Instruments.*

Where a verdict finds that the grantor was induced by fraud to execute a deed, the trial judge should permit the complaint to be so amended as to conform to the verdict, as on the allegations and verdict the equity of the grantor was one for reformation and not for cancellation, though the action was brought for cancellation of the deed.

6. DEEDS—*Reformation of Instruments—Consideration—Corroborative Evidence.*

In an action for the reformation of a deed as to the consideration, the value of the land and what the grantor would have sold it for at the time of the execution of the deed is competent in corroboration of the evidence of the grantor as to the consideration.

7. REFORMATION OF INSTRUMENTS—*Compromise and Settlement—Consideration.*

In an action for the reformation of a deed as to the consideration the grantor is not bound to accept a proposition to compromise not in accordance with his claim.

8. REFORMATION OF INSTRUMENTS—*Consideration.*

In an action for the reformation of a deed, one of the plaintiffs could not compel the defendant to take a share of the premises acquired by foreclosure at the price expressed in the deed.

9. REFORMATION OF INSTRUMENTS—*Consideration.*

In an action to reform a deed, if defendant elects to take a certain share of the premises he would be required to pay one of the plaintiffs, who claimed such share through title paramount to the defendant's, at a price based on the consideration expressed after reformation.

ACTION by R. H. Gillis and others against John A. Arringdale, heard by *Judge O. H. Allen* and a jury, at August Term, 1903, of the Superior Court of PERSON County. From a judgment for the plaintiffs both parties appealed.

*Kitchin & Carlton,* for the plaintiffs.

*Rountree & Carr* and *Manning & Foushee,* for the defendant.

PLAINTIFFS' APPEAL.

CONNOR, J.   The plaintiffs alleged that prior to the first day of May, 1900, they owned the tract of land in controversy as tenants in common, and that prior to said day the said land had been partitioned between them; that the portion of it allotted to the plaintiff J. J. Gillis had been mortgaged to T. C. Brooks; that during the month of May, 1900, the plaintiffs agreed with the defendant, through his agent, in consideration of $150 to give him a ten-year option to buy the minerals on said land at the price of $3,000; that sometime thereafter the said agent, in whom the plaintiffs had great confidence, procured their signatures to a paper-writing upon the representation that it correctly set out the terms of said contract, the agent paying to each of the plaintiffs the sum of $25; that relying upon the representation of the agent they signed the said paper-writing; that by such representation the agent prevented the plaintiffs from reading the paper; that the plaintiffs always thought said paper set forth the true contract price until the month of May, 1901, when the defendant offered to settle with them by paying the sum of $500 for the minerals on the entire tract of land, instead of the true contract price of $3,000, being $500 to each of them, which the plaintiffs refused to accept; that upon examining the paper-writing, which had been recorded in the office of the Register of Deeds of Person County, they discovered that it was not the contract or option as they had been led to believe, but on the contrary it was a deed conveying said mineral interest for the sum of $500. The said deed contains the following clause: "That the said parties of the first part, for and in consideration of the sum of $150, the receipt whereof is fully acknowledged, have bargained, sold

and conveyed, and by these presents do bargain, sell and convey unto the said party of the second part, his heirs and assigns, all the mineral rights, metals and minerals to be found in, on or under the tract of land in Holloway's Township, Person County, North Carolina, as described as follows." (Here follows a description of the land.) The said paper-writing also contains the following clause:

"It is further understood between the parties to this deed that said John A. Arringdale or his heirs and assigns shall commence to develop said mines by searching and prospecting for the same within six months from the date hereof, and he shall have ten years within which to search for, prospect for and open up any mine or mines on said land, and after making search for and opening up the same, if the said John A. Arringdale shall find any mine or mines that he will care to operate, then he shall pay to the parties of the first part, or their authorized agent, or deposit in the Bank of Virgilina, which shall constitute a lawful tender, the additional sum of $500 to their credit, after having notified the parties of the first part that he intends to operate the same."

The plaintiffs further allege that the defendants went into possession of the land and cut and destroyed a large quantity of timber; they demand judgment, first, that the deed be declared void and cancelled; second, for three thousand dollars damages.

The defendant admits that he procured from the plaintiffs an option for the sum of $150 and that he was represented in the negotiation by his agent. He further says that the terms of the option were correctly set forth in the deed, and denies that any fraud was practiced upon the plaintiffs by his agent. He also denies each and every allegation of fraud or misrepresentation as to the terms of the deed, and admits that he went into possession of the land and says he spent many thousand dollars in prospecting for minerals and

putting up machinery on the land; that all of the improvements were put on it by the defendant before the plaintiffs made any claim or allegation that there was any mistake in the deed or any fraud practiced upon them. The cause came on for trial at August Term, 1902, before *Judge Mc-Neill,* when the issues submitted to the jury were as follows: "1. Was the execution of the deed obtained from the plaintiffs by the fraud and misrepresentation of C. S. Garner, as alleged in the complaint? 2. If so, were the plaintiffs damaged thereby? (To both of these issues the jury responded in the affirmative.) 3. What is the value of the improvements placed upon the land by the defendant for mining the same? The jury responded '$4,000.'" His Honor set aside the verdict upon the second and third issues and made an order retaining the cause for further proceedings. The defendant excepted and entered notice of appeal, but being of opinion that such appeal was premature, it was by consent dismissed.

The cause came on again for trial before *Judge Allen* at August Term, 1903, when the following issue was submitted to the jury: "What was the true consideration agreed upon between the plaintiffs and the defendant for the mineral rights and privileges conveyed? Answer. '$3,000.'" The plaintiffs thereupon tendered a judgment upon the verdict, adjudging that "upon consideration of the verdict and of the admissions of the defendant  *   *   *  and allegations of the plaintiffs, the plaintiffs recover of the defendant the sum of $3,000 with interest, etc., and that said judgment be declared a lien on the land. His Honor refused to sign the judgment, endorsing the following entry thereon: "This judgment tendered by the plaintiffs and refused on the ground that the action is not one for a judgment on the debt, and that if it remains unpaid the plaintiffs have their remedy by an independent action at law." The plaintiffs excepted.

The plaintiffs then moved to so amend the complaint that it would conform to the judgment. His Honor refused the amendment and signed the judgment set out in the record. Said judgment directs the correction of the deed by striking out the words "five hundred dollars" and inserting in lieu thereof "three thousand dollars." The plaintiffs appealed.

The prayer for judgment indicates that the plaintiffs were not entirely clear as to the relief which they desired. They seemed to have conceived themselves entitled to have the deed cancelled and be remitted to their original status. They would in this view of the case have been entitled to judgment for such damages as the defendant may have done to the land by cutting and removing the timber, etc., not to the purchase price. They could not have the land and the price of it.

If the defendant had conceded, upon the finding of the jury, that the plaintiffs were entitled to have the deed cancelled, he would have been entitled to set up, by way of reducing the plaintiffs' damages, such improvements as he had placed upon the land to the extent, not of the cost to him, but of the enhanced value of the land. The defendant, however, does not offer to surrender the land and permit the cancellation of the deed, for the very obvious reason that he has expended large sums of money in prospecting for minerals and in putting up machinery on the land. He could not, in the light of the verdict of the jury, take the land for his improvements. His Honor, *Judge McNeill,* for this reason set the verdict aside in regard to the value of the improvements. We think that his Honor *Judge Allen* submitted the proper issue. Upon the coming in of the verdict the plaintiffs were entitled to have the deed corrected.

The only question therefore presented upon the plaintiffs' appeal is whether the Judge should, after making the correction, have proceeded to render judgment for the purchase price as fixed by the jury. He was of opinion that because

the action did not contemplate this result, the plaintiffs were not entitled to such relief.

We are of opinion that the conclusion reached in the trial is entirely consistent with the allegations in the complaint; that upon the allegations and the verdict the plaintiffs' equity was for reformation and not cancellation. It being the purpose of The Code system to avoid a multiplicity of suits and afford complete relief in one action, the courts should be liberal in allowing amendments with this end in view, especially so in respect to the prayer for judgment. It has been uniformly held that judgment should be rendered in accordance with the facts alleged and proved, without regard to the prayer.

While we hesitate to question the wisdom of the learned and careful Judge who tried this cause in refusing to permit the amendment upon such terms and conditions as upon the whole case he thought proper, we are not able to see from the record before us any good reason why the amendment, if necessary, should not have been allowed and an end put to the litigation. It has been frequently held by this Court that the plaintiff may in one action have relief upon equitable and legal rights. *Ely v. Early,* 94 N. C., 1.

In regard to the share of J. J. Gillis, it appears by the admission of both parties that, prior to the execution of the deed in controversy, he had executed a mortgage to T. C. Brooks, which was duly recorded; that said Brooks, on the first day of October, 1900, sold the land pursuant to the power contained in the mortgage, and it was purchased by A. S. Gillis, to whom he executed a deed which was recorded on November 25, 1900. In June, 1901, J. J. Gillis received notice from the defendant that he had paid $500 into the bank of Virgilina, whereupon he, the said Gillis, collected his part thereof ($83.33) and signed a receipt in full for his share of the money due on the sale. The plaintiff A. S.

Gillis insists that he is entitled to stand in the place of J. J. Gillis and receive the $500, and that the receipt by him of the $83.33 does not affect his rights. As the plaintiff A. S. Gillis claims title paramount to the defendant, of course his title is in no manner affected by the action of the plaintiff J. J. Gillis. He does not acquire the right to compel the defendant to take the J. J. Gillis share at $500. If, however, the defendant elects to take such share under his contract, he would pay the $500 to the plaintiff A. S. Gillis. This would seem to be the rights of the parties upon the facts herein stated. The defendant should exercise his election at or before the next term of the Superior Court of Person County, at which term judgment should be entered in accordance with this opinion.

Error.

### DEFENDANT'S APPEAL.

CONNOR, J. In the defendant's appeal in this cause we find no error in the trial before *Judge McNeill.* Upon the trial before *Judge Allen,* the plaintiff R. H. Gillis was introduced as a witness and testified in regard to the terms of the option and the execution of the contract as set out in the plaintiffs' appeal. He was asked the following question: "At the time when you made this contract, what, in your opinion, was the fair and reasonable value of the minerals on this tract of land of 465 acres, if that was the size of it?" Answer. "Three thousand dollars; I never would have agreed to anything else." The defendant objected to the question and answer, and, upon his objection being overruled, excepted. He was asked the further question, "At what price had you and the other owners of this property—the minerals I mean—held the same for some time?" Answer. "Three thousand dollars." The defendant objected and, upon his objection being overruled, excepted.

We find no error in his Honor's ruling in this respect. The testimony was competent for the purpose of corroborating the plaintiffs' contention that the price agreed to be paid was $3,000, and not $500. The defendant tendered in writing to the plaintiffs, before the trial of the case, a proposition to compromise, and in open court tendered the plaintiffs the money in accordance with said proposition. The plaintiffs declined to accept it, and his Honor held that it was not a compliance with the rights of the plaintiffs as set forth in the pleadings, to which the defendant excepted. We concur with his Honor's ruling in this respect. The plaintiffs were under no obligation to accept the proposition to compromise. They were entitled to stand upon their rights under the contract.

Upon a review of the entire record we find no error, and the judgment must be

Affirmed.