CREEK POINTE HOMEOWNER'S ASSOCIATION, INC. AND KENNETH C. KREMER, PLAINTIFFS v. RICHARD HAPP, DEFENDANT AND THIRD-PARTY PLAINTIFF v. WEYERHAEUSER REAL ESTATE COMPANY, INC., THIRD-PARTY DEFENDANT

No. COA00-556

(Filed 18 September 2001)

## 1. Appeal and Error— appealability—homeowner's association dismissed from suit—substantial right affected

An order dismissing a homeowner's association but not an individual from an action involving a fence across a road was interlocutory but appealable because a substantial right was affected.

## 2. Standing— homeowner's association—case by case analysis

The North Carolina Planned Community Act (NCPCA), N.C.G.S. Chapter 47F, does not automatically confer standing upon homeowners' associations in every case, and questions of standing should be resolved by the courts in the context of the specific factual circumstances presented and with reference to the principles of law and equity as well as other North Carolina statutes that supplement the NCPCA.

## 3. Standing— homeowner's association—representative capacity

A homeowner's association lacked standing to bring suit as the representative of individual members of the association in an action arising from a fence placed across a road where, under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, individual members would have standing to bring individual suits and the alleged injury was germane to the organization's purpose, but the participation of individual members was necessary because the financial impact of the fence upon individuals could vary from minimal to substantial. The association may have had standing in its representative capacity if it had sought only declarative or injunction relief and not monetary damages.

## 4. Standing— homeowner's association—injury to the association

A homeowner's association had standing to pursue claims alleging injury to the association itself from a fence placed across a road where the covenants stated that it had a duty to maintain

the private roads within the development. The presence of a fence across a subdivision road clearly injures the association's ability to carry out this duty, the injury is causally connected to defendant's alleged behavior, and the injury likely would be redressed by a favorable verdict.

**5. Parties— joinder motions granted—additional motions considered**

The trial court did not err in an action arising from the placement of a fence across a road by considering a motion to dismiss the homeowner's association's claims "after" joining other homeowners as necessary parties. Both rulings were part of orders issued at the conclusion of a hearing and the court took no actions affecting the resolution of the issues to be tried. The cases cited by the association all addressed situations in which substantive matters were determined in the absence of necessary parties.

Judge WALKER concurring in part and dissenting in part.

Appeal by plaintiff from order entered 21 March 2000 by Judge Arnold O. Jones in Pamlico County Superior Court. Heard in the Court of Appeals 14 March 2001.

*Harris, Shields, Creech and Ward, P.A., by C. David Creech, for plaintiff-appellant.*

*McCotter, McAfee, & Ashton, PLLC, by Charles K. McCotter, Jr., for defendant-appellee.*

*Chesnutt, Clemmons, Thomas & Peacock, P.A., by Gary H. Clemmons for third party defendant-appellee.*

BIGGS, Judge.

Plaintiff, Creek Pointe Homeowner's Association, Inc., appeals from the trial court's dismissal of its claims for lack of standing, pursuant to N.C.R. Civ. P. 12(b)(6). This matter arises out of a dispute over a fence that Richard Happ (defendant), a resident of the Creek Pointe subdivision, placed across Deep Creek Road, in Creek Pointe. We reverse the decision of the trial court.

The pertinent facts are as follows: Defendant owns lots 27 through 31 in Creek Pointe, which is located in Pamlico County, about sixteen miles from New Bern, North Carolina. His lots comprise over

200 acres, and lie on either side of Deep Creek Road. This land includes the entire eastern portion of Creek Pointe subdivision. His lots are contiguous; they are bordered by Deep Creek Road, by Goose Creek, and by a small triangular portion of lot 22. Defendant purchased the lots in 1994, and erected the fence shortly thereafter.

In November, 1999, the Creek Pointe Homeowner's Association (association) and individual plaintiff Kenneth C. Kremer (Kremer), one of the owners of lot 22, brought suit against defendant, seeking an injunction to require the defendant to remove the fence across Deep Creek Road, and to bar him from replacing it with another fence. The plaintiffs asked for compensatory and punitive damages and for attorneys' fees. In their complaint, plaintiffs alleged that the fence violated a restrictive covenant granting an easement in favor of all Creek Pointe residents and entitling them to the use of all roads in Creek Pointe, including Deep Creek Road. Defendant's answer asserted that permission to erect a fence had been a condition of his contract of sale with Weyerhaeuser Real Estate Co., Inc. (developer), and also that the Creek Pointe Homeowner's Association previously had consented to the fence.

In addition, defendant filed a motion under N.C.R. Civ. P. 19, "Necessary Joinder of Parties," seeking dismissal for failure to join all individual homeowners as necessary parties, and a motion under Rule 12(b)(6), seeking dismissal of all claims of the association for lack of standing or interest. Defendant also filed a third party complaint against the developer. In January, 2000, the defendant filed a motion for summary judgment against both plaintiffs. This was followed by the developer's February, 2000, motion for summary judgment, and by the association's motion of 15 February 2000 seeking an injunction to prohibit defendant from harassing its members.

All motions were heard on 25 February 2000, at which time the trial judge issued the following orders:

1. Granted defendant's 12(b)(6) motion, dismissing all claims as to the association based on lack of standing or interest.

2. Ordered that plaintiff Kremer's wife, all other Creek Pointe homeowners, and the developer, all must be joined as necessary parties to the suit.

3. Ordered the fence moved so that it did not block any part of lot 22.

4. Denied the injunction regarding harassment of association members.

5. Denied the developer's motion for summary judgment.

6. Denied defendant's motion for summary judgment.

On 27 March 2000, the association filed notice of appeal from the dismissal of their claims for lack of standing or interest. It is this appeal that is presently before this Court. The other orders entered by the trial court in this matter are not before this Court.

[1] We first note that the trial court did not dismiss the case as to plaintiff Kremer. Thus, its ruling that the association lacked standing is an interlocutory order. *See Jenkins v. Wheeler*, 69 N.C. App. 140, 316 S.E.2d 354, *disc. review denied*, 311 N.C. 758, 321 S.E.2d 136 (1984) (order dismissing claims against one defendant is interlocutory where other defendants remain in suit). Interlocutory orders generally are not immediately appealable. *Bailey v. Gooding*, 301 N.C. 205, 270 S.E.2d 431 (1980); *Mabrey v. Smith*, 144 N.C. App. 119, 548 S.E.2d 183 (2001). However, an interlocutory order may be appealed before final judgment under two circumstances: (1) there is a certification by the trial court that there is no just reason to delay the appeal, or (2) the ruling affects a substantial right. *Evans v. United Servs. Auto. Ass'n*, 142 N.C. App. 18, 541 S.E.2d 782, *cert. denied*, 353 N.C. 371, 547 S.E.2d 810 (2001); *Smith v. Young Moving & Storage, Inc.*, 141 N.C. App. 469, 540 S.E.2d 383 (2000), *aff'd*, 353 N.C. 521, 546 S.E.2d 87 (2001); *Norris v. Sattler*, 139 N.C. App. 409, 533 S.E.2d 483 (2000).

The determination of whether a substantial right is affected is made on a case by case basis. *Collins v. Talley*, 135 N.C. App. 758, 522 S.E.2d 794 (1999); *Stafford v. Stafford*, 133 N.C. App. 163, 515 S.E.2d 43, *aff'd*, 351 N.C. 94, 520 S.E.2d 785 (1999). The reviewing court must determine whether denial of immediate review exposes a party to multiple trials with the possibility of inconsistent verdicts. *Murphy v. Coastal Physician Grp., Inc.*, 139 N.C. App. 290, 533 S.E.2d 817 (2000); *Moose v. Nissan of Statesville*, 115 N.C. App. 423, 444 S.E.2d 694 (1994). In the present case we find that, although there was no certification by the trial judge, the order dismissing all claims as to the association affects a substantial right of appellants and is, therefore, appealable. *See Jenkins*, 69 N.C. App. 140, 316 S.E.2d 354 (substantial right affected where order dismissed claims against one of several defendants, thus raising the possibility of multiple trials

against different members of the same group). *See also Bernick v. Jurden*, 306 N.C. 435, 293 S.E.2d 405 (1982).

**[2]** The issue before this Court is whether the trial court erred in its conclusion that the Creek Pointe Homeowner's Association lacked standing to join Kremer as a plaintiff in this action. The pertinent features of the association are as follows: The creation of the association was contemplated by the developer, who stated in the Declaration of Covenants, Conditions, and Restrictions that, upon the sale of 75% of the lots in Creek Pointe, "[t]here shall be created, . . . The Creek Pointe Homeowner's Association." The association was incorporated in November, 1989. Its membership consists of the owners of all lots in Creek Pointe. Its Articles of Incorporation state that "the specific purposes for which it is formed are to provide for maintenance, preservation and architectural control of the residence lots and roads within [Creek Pointe.]" The Articles also state that the association has "any and all powers, rights, and privileges which a corporation organized under the Non-Profit Corporation Law of the State of North Carolina by law may now or hereafter have or exercise."

In North Carolina, homeowners' associations historically have enjoyed the general right to participate in litigation. Our appellate courts have considered suits brought by homeowners' associations on a case-by-case basis, and have permitted such associations, when appropriate, to pursue their claims in court. *See, e.g., Village Creek Prop. Owners' Ass'n, Inc. v. Town of Edenton*, 135 N.C. App. 482, 520 S.E.2d 793 (1999) (property owners' association held to have standing to challenge rezoning of neighboring property); *McGinnis Point Owners Ass'n v. Joyner*, 135 N.C. App. 752, 522 S.E.2d 317 (1999) (homeowners' association successfully sues to enforce restrictive covenant requiring property owners to pay annual assessment).

The association asserts standing under the North Carolina Planned Community Act (NCPCA), N.C.G.S. Chapter 47F. Their argument is based primarily upon the following provision of the statute:

Subject to the provisions of the articles of incorporation or the declaration and the declarant's rights therein, the [homeowners'] association may: . . .

(4) Institute, defend, or intervene in litigation or administrative proceedings on matters affecting the planned community[.]

N.C.G.S. 47F-3-102 (1999), Powers of owners' association, 102(4). The association's argument is that this is a matter "affecting the planned

community," and thus that the statute assures them of standing to bring suit. However, we do not read the NCPCA as conferring an automatic right upon homeowners' associations, but rather as reiterating the common law rule that, when otherwise proper, a homeowners' association may participate in a lawsuit. Moreover, the statute makes no further attempt to resolve questions of jurisdiction or standing. It does not define the phrase "affecting the planned community," or otherwise restrict the potential range of litigation. The statute does not employ the term 'standing' in its recitation of an association's rights; nor does it address issues of standing in any of its other provisions. We conclude that, although the NCPCA clearly authorizes homeowners' associations as a general class to institute, defend, or intervene in litigation, this statute does not diminish our judicial responsibility to evaluate whether the association has standing to bring this suit under the specific fact situation presented. In this regard, we note another relevant provision of NCPCA, N.C.G.S. § 47F-1-108 (1999), "Supplemental general principles of law applicable," which states:

> The principles of law and equity as well as other North Carolina statutes . . . supplement the provisions of this Chapter, except to the extent inconsistent with this Chapter. When these principles or statutes are inconsistent or conflict with this Chapter, the provisions of this Chapter will control.

We find nothing in the NCPCA that is inconsistent with our common and statutory law regarding issues of jurisdiction and standing. Therefore, we hold that the NCPCA does not <u>automatically</u> confer standing upon homeowners' associations in every case, and that questions of standing should be resolved by our courts in the context of the specific factual circumstances presented and with reference to the "principles of law and equity as well as other North Carolina statutes" that supplement the NCPCA. Accordingly, we will examine the case *sub judice* in this manner.

[3] Jurisdiction in North Carolina depends on the existence of a justiciable case or controversy. *Town of Ayden v. Town of Winterville*, 143 N.C. App. 136, 544 S.E.2d 821 (2001); *Town of Pine Knoll Shores v. Carolina Water Service*, 128 N.C. App. 321, 494 S.E.2d 618 (1998). Standing is a necessary prerequisite to the court's proper exercise of subject matter jurisdiction. *Peacock v. Shinn*, 139 N.C. App. 487, 533 S.E.2d 842, *disc. review denied*, 353 N.C. 267, 546 S.E.2d 110 (2000); *Transcontinental Gas Pipe Line Corp. v. Calco Enter.*, 132 N.C. App.

237, 511 S.E.2d 671, *disc. review denied*, 351 N.C. 121, 540 S.E.2d 751 (1999). "Standing" refers to the issue of whether a party has a sufficient stake in an otherwise justiciable controversy that he or she may properly seek adjudication of the matter. *Sierra Club v. Morton*, 405 U.S. 727, 31 L. Ed. 2d 636 (1972). The relationship between standing and the requirement of a justiciable controversy has been expressed as follows: "Judicial intervention in a dispute is normally contingent upon the presence of a justiciable controversy. Standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issue he wants adjudicated." *Bremner v. City & County of Honolulu*, 96 Haw. App. 134, 28 P.3d 350 (2001). "The gist of standing is whether there is a justiciable controversy being litigated among adverse parties with substantial interest affected so as to bring forth a clear articulation of the issues before the court." *Texfi Industries v. City of Fayetteville*, 44 N.C. App. 268, 269-70, 261 S.E.2d 21, 23 (1979), *aff'd*, 301 N.C. 1, 269 S.E.2d 142 (1980).

An association may have standing to bring suit either as a plaintiff, to redress injury to the organization itself, or as a representative of injured members of the organization. The leading case on the authority of an association to bring suit on behalf of its members is *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 53 L. Ed. 2d 383 (1977). In *Hunt*, the United States Supreme Court established three prerequisites for an association to sue in a representative capacity:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit.

*Hunt*, 432 U.S. at 343, 53 L. Ed. 2d at 394. The Court expanded on the third requirement, addressing the significance of the type of relief sought as follows:

> [W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have

expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

*Id.* The criteria articulated in *Hunt v. Washington State* have been applied several times by our appellate courts. *See, e.g., River Birch Associates v. City of Raleigh,* 326 N.C. 100, 388 S.E.2d 538 (1990) (applying *Hunt* to issue of whether homeowners' association had standing); *Northeast Concerned Citizens, Inc. v. City of Hickory,* 143 N.C. App. 272, 545 S.E.2d 768, *disc. review denied,* 353 N.C. 526, 549 S.E.2d 220 (2001) (citizens' association lacked standing to challenge zoning ordinance where not all members had individual standing to sue); *Landfall Group v. Landfall Club, Inc.,* 117 N.C. App. 270, 450 S.E.2d 513 (1994) (association lacked standing to bring suit because one of its members would not have had standing as an individual to bring action). Therefore, this Court will consider the trial court's ruling in the context of the requirements for standing to sue in a representative capacity articulated in *Hunt v. Washington State,* as these criteria have been interpreted by our state courts.

We find that the association meets the first prong of the *Hunt* test, in that the individual members of the Creek Pointe Homeowner's Association would have standing to bring suit as individuals. The suit alleges violation of the "Declaration of Covenants and Restrictions" filed by the developer with the Pamlico County Register of Deeds. The declaration was filed in 1989, and was incorporated by reference as part of the "Articles of Incorporation" of the Creek Pointe Homeowner's Association. The pertinent restriction establishes an easement granting access to subdivision roads in favor of all landowners in Creek Pointe. "[G]enerally, grantees in a subdivision are beneficiaries of any and all restrictive covenants imposed upon the subdivision so as to give them standing to challenge alleged violations of the restrictive covenants." *Taylor v. Kenton,* 105 N.C. App. 396, 401, 413 S.E.2d 576, 579 (1992) (plaintiffs had standing to enforce covenant, although the document setting out covenants did not specifically grant this right). *See also Hawthorne v. Realty Syndicate, Inc.,* 300 N.C. 660, 268 S.E.2d 494 (1980) (affirming Court of Appeals' holding that plaintiff landowners in subdivision had standing to enforce restrictive covenant applicable to neighborhood).

This Court finds also that the association meets the second criteria enunciated in *Hunt* for standing: that the alleged injury be "germane to the organization's purpose." The stated purpose of the Creek

Pointe Homeowner's Association is to "provide for maintenance, preservation and architectural control of the residence lots and roads within [Creek Pointe]." Plaintiff's suit seeks to regain access to one of the private roads within Creek Pointe. The controversy over defendant's fence is one that implicates the core functions of the association.

The third prerequisite for representational standing is that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." We will evaluate the plaintiffs' claims and the remedies sought, to determine whether any of the association's members are necessary parties to the suit. The complaint seeks "just compensation for their property rights" for Creek Pointe residents, asking specifically for "damages in an amount in excess of [$10,000,]" as well as "punitive damages against Happ in a sum in excess of [$10,000,]" and attorney's fees. Thus, the suit seeks both compensatory and punitive money damages, while *Hunt* contemplated situations in which only injunctive or declaratory relief was sought. The calculation of damages would require consideration of the homeowners' individual circumstances. Plaintiff Kremer alleged that the fence actually prevents access to part of his land; another homeowner might assert that the fence reduced the value of his property, spoiled the view from the front porch, or prevented the use of the road itself.

An organization generally lacks standing to sue for money damages on behalf of its members if the damage claims are not common to the entire membership, nor shared equally, so that the fact and extent of injury would require individualized proof. *Warth v. Seldin*, 422 U.S. 490, 45 L. Ed. 2d 343 (1975). "[W]here an association seeks to recover damages on behalf of its members, the extent of injury to individual members and the burden of supervising the distribution of any recovery mitigates against finding standing in the association." *River Birch Associates v. City of Raleigh*, 326 N.C. 100, 130, 388 S.E.2d 538, 555 (1990) (citing *Hunt* for its holding that homeowners' association lacked standing where it sought money damages for some of its members). Indeed, "damages claims usually require significant individual participation, which fatally undercuts a request for associational standing." *Pennsylvania Psychiatric Society v. Green Springs Health Services, Inc.*, 280 F.3d 278, 284 (2000). In the case *sub judice*, any monetary damages owed to plaintiffs would call for "individualized proof," and would not necessarily be common to all. The financial impact of the fence upon various members of the

association could vary from significant to minimal. Therefore, we find that the participation of individual homeowners is necessary to the suit.

If plaintiffs had sought only declarative or injunctive relief, the association may have had standing to sue in its representative capacity. The assertion by Creek Pointe homeowners of a right to unfettered access to all roads within the subdivision rests upon their ownership of a lot in Creek Pointe and their membership in the association. Thus, "[t]he interest of [individual homeowners] in the [Creek Pointe roads] is indirect. Any interest the home owners have in [the roads] derives through their membership in the Homeowners' Association. . . . [which can] adequately represen[t] such interest[.]" *River Birch*, 326 N.C. at 128-29, 388 S.E.2d at 554. However, having determined that this suit's pursuit of monetary damages requires the participation of individual homeowners, we necessarily find that the association does not meet the third criteria for standing under *Hunt v. Washington State* to bring suit as the representative of its members. Consequently, we hold that the homeowners' association lacked standing, under the criteria articulated in *Hunt* and followed in subsequent cases, to bring suit as the representative of individual members of the association.

[4] We next consider whether the association has standing to join Kremer as a separate plaintiff, rather than as the representative of homeowners. To bring suit on its own behalf, an association need only meet the "irreducible constitutional minimum" of a sufficient stake in a justiciable case or controversy. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 119 L. Ed. 2d 351 (1992) (the "irreducible constitutional minimum" of Article III of the U.S. Constitution requires plaintiff who wishes to pursue claim in federal court to demonstrate (1) injury in fact, (2) causal relationship between injury and conduct complained of, and (3) likelihood that injury would be redressed by favorable verdict); *Transcontinental Gas Pipe Line*, 132 N.C. App. 237, 511 S.E.2d 671, (reiterating holding of *Lujan* in concurring opinion).

In the instant case, the Declaration of Covenants, Conditions, and Restrictions, and the By-laws of the association, state that the association has a duty to maintain the private roads within Creek Pointe. Clearly, the presence of a fence across one of the subdivision's roads injures the association in its ability to carry out this duty. The injury is causally connected to the defendant's alleged behavior, and likely

would be redressed by a favorable verdict in this action. Therefore, we hold that on the facts of this case, the association had standing to bring this suit on its own behalf. *See District Council 20, American Federation of State, County and Municipal Employees*, 150 F.Supp.2d 136 (U.S. Dist. Ct., D.C., 2001) (court finds that *Hunt* precludes plaintiff organization from suing in representative capacity, but allows association to remain in suit for purpose of litigating claims for declaratory and injunctive relief). Accordingly, we reverse the trial court's ruling that the Creek Pointe Homeowner's Association lacks standing to participate in this action, and hold that the association has standing to pursue claims alleging injury to the association itself.

[5] The association also argues that the trial court erred in considering the defendant's motion to dismiss the association's claims for lack of standing "after" it had entered an order joining other homeowners as necessary parties. We disagree. Both rulings were part of the orders issued at the conclusion of the hearing on 25 February 2000. Further, the cases cited by plaintiff for the proposition that after ordering necessary parties joined, no actions may be taken that are "determinative of a claim arising in the action," all address situations in which substantive matters were determined in the absence of necessary parties. In the case *sub judice*, the court took no actions affecting the resolution of the issues to be tried.

The parties raise several other issues in their briefs, including arguments about whether it is significant that the appellant is Creek Pointe Homeowner's Association Inc., while the original declaration referred to the Creek Pointe Homeowner's Association (emphasis added). We do not find it necessary to resolve these questions.

For the reasons discussed above, we hold that the trial court erred by dismissing all claims as to the Creek Pointe Homeowner's Association, and hold that the association has standing to pursue claims against this defendant on its own behalf. Accordingly, we reverse its order dismissing all claims of the Creek Pointe Homeowner's Association.

Reversed.

Judge SMITH concurs.

Judge WALKER concurring in part and dissenting in part.

WALKER, Judge, concurring in part and dissenting in part.

I respectfully dissent from that part of the majority opinion which holds that while the North Carolina Planned Community Act (NCPCA) authorizes homeowners' associations as a general class to institute, defend or intervene in litigation, the statute does not abrogate the common law by advancing "a new right upon homeowners' associations" to representative standing. I agree with the position taken by both plaintiffs and third-party defendant Weyerhaeuser Real Estate Company, Inc. (Weyerhaeuser) that the NCPCA confers representative standing upon the Creek Pointe Homeowner's Association (Creek Pointe) to enforce the easement right of lot owners to Deep Creek Road consistent with its declaration, articles of incorporation and bylaws. *See* N.C. Gen. Stat. § 47F-3-102(4) (1999).

The NCPCA provides that homeowners' associations may "[i]nstitute, defend, or intervene in litigation or administrative proceedings on matters affecting the planned community." *Id.* This section applies retroactively to homeowners' associations formed prior to the NCPCA's effective date of 1 January 1999. *See* N.C. Gen. Stat. § 47F-3-102(4), commentary (1999); *see also* Patrick K. Hetrick, *Of "Private Governments" and the Regulation of Neighborhoods: The North Carolina Planned Community Act*, 22 Campbell L. Rev. 1, 18 (1999). The majority concludes that this language "simply reiterates" the common law rule regarding homeowners' association standing. However, the language of N.C. Gen. Stat. § 47F-3-102(4) must be considered in conjunction with the overall scheme of planned communities and the objectives of the NCPCA. Admittedly, the statute does not automatically confer representative standing upon a homeowners' association in every case.[1] Nevertheless, I construe the NCPCA to allow a homeowners' association, both as a real party in interest and in a representative capacity, to pursue litigation in matters affecting the common areas within the planned community; provided such actions are consistent with its declaration, articles of incorporation and bylaws.

Practically speaking, a homeowners' association assures lot owners that basic needs such as ground care and street maintenance are fulfilled. However, the association also provides its lot owners with common emotional, psychological, and social advantages. *See* Harvey Rishikof and Alexander Wohl, *Private Communities or Public Gov-*

---

1. For example, a homeowners' association would not have representative standing to initiate litigation on behalf of a lot owner whose sole cause of action is one for the breach of a contract with a builder.

*ernments: "The State Will Mark the Call,"* 30 Val. U. L. Rev. 509, 513 (1996). Agreed to rules regarding the use of common areas and restrictions on what the lot owners are allowed to display or include in their individual units provide a feeling of conformity that many find reassuring. *Id.* The creation of this sense of commonality requires lot owners, in forming a planned community, to make a collective assignment to the homeowners' association of certain interests enabling the lot owners to collectively take action in matters affecting the common areas. I believe that, upon the formation of a planned community, the NCPCA envisions that the lot owners collectively assign to the homeowners' association their real property interests in the common areas. Thus, when a matter arises, as in the case *sub judice*, affecting the use and control of a common area, the homeowners' association, in accordance with N.C. Gen. Stat. § 47F-3-102(4) is conferred with representative standing to institute litigation on behalf of the lot owners.

My reading of N.C. Gen. Stat. § 47F-3-102(4) is compatible with other statutory language dealing with real property interests found elsewhere in the NCPCA. For example, under N.C. Gen. Stat. § 47F-3-112, a homeowners' association, upon approval of eighty percent (80%) of the lot owners, may convey, encumber or otherwise voluntarily transfer portions of any common area within the planned community. *See* N.C. Gen. Stat. § 47F-3-112(a) (1999). Such transfers become *"free and clear* of any interest of any lot owner or the association in or to the common [area] conveyed or encumbered, including the power to execute deeds or other instruments." N.C. Gen. Stat. § 47F-3-112(b) (1999) (emphasis added). The NCPCA's official commentary notes this section was included to "clarify that if conveyance or encumbrance is authorized by the required percentage of owners, common [areas] may be conveyed or encumbered free and clear of any easements, rights of way or claims which might be asserted by individual lot owners in or to that common area by virtue of their ownership of lots." N.C. Gen. Stat. § 47F-3-112, commentary (1999).

Other provisions within the NCPCA demonstrate that upon formation the lot owners assign to the homeowners' association their real property interest in common areas. In an eminent domain proceeding affecting a common area, the NCPCA requires that the portion of an award attributable to the common area taken is to be paid to the association, rather than distributed pro rata to the lot owners. *See* N.C. Gen. Stat. § 47F-1-107 (1999). This statutory requirement

ensures that all the lot owners in a planned community receive compensation for the taking. Consequently, if a body with eminent domain authority seeks to acquire a common area the court would be required to disperse any monetary compensation to the homeowners' association regardless of the disparate impact the eminent domain might have on the individual lot owners. Therefore, in an eminent domain proceeding, only the homeowners' association need be named as a party defendant. In such a case the homeowners' association's evidence establishing the damages may include testimony from individual lot owners.

The same rationale applies to the case *sub judice*. In order to receive compensatory or punitive damages, Creek Pointe would have to present evidence demonstrating how Happ's erection of a fence has damaged the planned community; including all the individual lot owners. Thus, permitting Creek Pointe representative standing ensures the protection of all the lot owners' interests.

The NCPCA's recognition of representative standing is also reflected in the statutory language dealing with the termination of a homeowners' association. In the event the lot owners decide to terminate the planned community, the NCPCA requires that upon termination the remaining common areas vest in the lot owners as tenants in common. *See* N.C. Gen. Stat. § 47F-2-118(e) (1999). This vesting of remaining common areas results in the return to the lot owners of the real property interest assigned to the homeowner's association at its inception.

Based on my analysis of the NCPCA, I must disagree with the majority's conclusion that the third prong of *Hunt* has not been satisfied. I conclude that neither the claim asserted nor the relief requested requires the participation of the individual lot owners in this lawsuit. *See Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 53 L. Ed. 2d 384, 394 (1977). Weyerhaeuser as a third-party defendant supports the position of the plaintiffs in this action. Additionally, Weyerhaeuser created this subdivision and formed the homeowners' association. Obviously, evidence from Weyerhaeuser will be crucial in establishing the common areas within Creek Pointe, including Deep Creek Road. Notwithstanding defendant Happ's contention as to standing, he elected to assert a counterclaim against the homeowners' association alleging a superior right to this road which enables him to close it. Therefore, the individual lot owners are not pursuing a claim or relief for which their participation would be required.

I concur with the majority opinion that the homeowners' association has standing to pursue claims for declaratory and injunctive relief.