IN THE COURT OF APPEALS OF NORTH CAROLINA
No. COA21-648
Filed 7 June 2022

Mecklenburg County, No. 19 CVS 15620

KEVIN SCOTT VIOLETTE, and VIOLETTE FAMILY FARM, LLC, a North Carolina
Limited Liability Company, Plaintiffs,

v.

The TOWN OF CORNELIUS, a North Carolina Body politic and corporate,
BLUESTREAM PARTNERS, LLC, a North Carolina Limited Liability Company,
JACOB a/k/a "JAKE" J. PALILLO, and WAYNE HERRON, Defendants.

Appeal by Plaintiffs from order entered on 14 May 2021 by Judge Daniel A.
Kuehnert in Mecklenburg County Superior Court. Heard in the Court of Appeals 27
April 2022.

*Davies Law Firm, PLLC, by Kenneth T. Davies, for Plaintiffs-Appellants.*

*Cranfill Sumner LLP, by Steven A. Bader and Ryan D. Bolick, for Defendants-Appellees Town of Cornelius and Wayne Herron.*

*Copeland Richards, PLLC, by Drew A. Richards, for Defendants-Appellees Bluestream Partners, LLC, and Jacob J. Palillo.*

JACKSON, Judge.

¶ 1        Kevin Violette ("Mr. Violette") and Violette Family Farm, LLC (collectively,
"Plaintiffs") appeal the trial court's order granting the Town of Cornelius ("the
Town"), Bluestream Partners, LLC ("Bluestream Partners"), Jacob Palillo ("Mr.
Palillo"), and Wayne Herron's ("Mr. Herron") (collectively, "Defendants") joint motion

to dismiss or, in the alternative, for summary judgment. Because Plaintiffs lack standing to challenge the Town's rezoning of the property at issue, the order of the trial court is affirmed.

## I. Background

¶ 2      The Forest at Bailey's Glen ("Bailey's Glen") is a phased construction, residential subdivision for residents 55 and older located in Cornelius, North Carolina. Bailey's Glen consists of 728 homes that have been built or are planned to be built and is bordered primarily by Bailey's Road to the west and Barnhardt Road to the south.

¶ 3      Plaintiffs own approximately 32 contiguous acres across the street from Bailey's Glen on Barnhardt Road. Mr. Violette lives there with his family. There are two homes on Plaintiffs' property. Mr. Violette lives in one and his adult son lives in the other. Some of the 32 acres were previously titled in Mr. Violette's name but were later deeded to Violette Family Farm, LLC, of which Mr. Violette is the manager and his trust is the sole member.

¶ 4      In December of 2017, Mr. Violette's neighbor across the street, Mr. William Clawson, died. On 26 April 2018, Mr. Clawson's estate sold the 13.57 acre tract where Mr. Clawson lived to Forestyle, LLC ("Forestyle"). Mr. Palillo is the managing member of Forestyle. He is also the managing member of Bluestream Partners, the developer of Bailey's Glen.

¶ 5     Bailey's Glen features an amenity center for residents and their guests. However, at the time Forestyle acquired Mr. Clawson's property, demand for the amenity center exceeded its capacity. Forestyle acquired Mr. Clawson's property to build a new amenity center for Bailey's Glen that better met the needs of Bailey's Glen residents.

¶ 6     On 26 March 2019, Mr. Palillo submitted an application on behalf of Bluestream Partners to the Town requesting rezoning of the property acquired by Forestyle from Mr. Clawson's estate from Rural Preservation to RP-CZ, a conditional district zoning under the Town's Land Development Code, to allow for construction of the new amenity center. The Town's Land Development Code provides that "[c]onditional [z]oning districts (CZ) may be utilized to create new unique districts[,] . . . in an effort to allow for those situations where a particular use or development, if properly planned, may have particular benefits and/or impacts on both the immediate area and the community as a whole[,]" which "cannot be predetermined or controlled by general district standards." In other words, the rezoning requested by Mr. Palillo on behalf of Bluestream Partners in March 2019 would have made construction of the new amenity center on the property compliant with the Town's Land Development Code even though it would not have been under the zoning of the property at the time it was acquired from Mr. Clawson's estate.

¶ 7     On 27 March 2019, the Town mailed Plaintiffs a Notice of a Community

Meeting in connection with the rezoning request. The meeting was held on 15 April 2019. An employee of Plaintiffs' counsel attended the meeting and voiced opposition to the rezoning on Plaintiffs' behalf.

¶ 8 On 15 April 2019, the first public hearing on the rezoning request was held. Plaintiffs attended the hearing and again voiced opposition to the rezoning.

¶ 9 On 14 May 2019, Mr. Palillo submitted a second application on behalf of Bluestream Partners to rezone the property. This second application requested that the property be rezoned to CZ, or conditional zoning. The second application included two parcels that the first application had not.

¶ 10 On 20 May 2019, the Town mailed Plaintiffs a Notice of Hearing on the second application. On 3 June 2019, a public hearing on the second application was held. Plaintiffs attended the hearing and again voiced opposition to the rezoning. The hearing was continued to 17 June 2019. On 17 June 2019, the Town approved the second application.

¶ 11 On 7 August 2019, Plaintiffs filed suit against Defendants, requesting a declaratory judgment that the rezoning was invalid because of non-compliance with the procedural rules governing the approval of conditional zoning applications under the Town's Land Development Code and with applicable North Carolina General

Statutes then in effect[1] and alleging that the Town's decision was arbitrary and capricious and *ultra vires*.[2]  Bluestream Partners and Mr. Palillo answered on 7 October 2019 and moved to dismiss Plaintiffs' complaint under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.  The Town and Mr. Herron answered on 11 October 2019 and moved to dismiss Plaintiffs' complaint under Rule 12(b)(6).

¶ 12      On 20 December 2019, Bluestream Partners voluntarily withdrew its earlier application and submitted a new rezoning application.  A neighborhood meeting was held on the new application on 27 February 2020.  The Town's Board of Commissioners held a public hearing on the application on 2 March 2020 and 5 October 2020.  The Town's Planning Board reviewed and recommended approval of the application on 10 August 2020.  The Town's Board of Commissioners approved the application on 5 October 2020.  The purpose of the new application and meeting

---

[1] In 2019, the General Assembly enacted "An Act to Clarify, Consolidate, and Reorganize the Land-Use Regulatory Laws of the State[,]" repealing N.C. Gen. Stat. §§ 160A-381 to 160A-385.1. 2019 S.L. 111 § 2.3.  Session Law 2019-111 consolidated and reorganized the municipal and county land-use planning and development statutes into one Chapter of the General Statutes. *Id.* § 2.1(e).  It also made various changes and clarifying amendments, *id.* § 1.1, *et seq.*, and gave persons aggrieved a separate cause of action, distinct from the certiorari statute, which it amended significantly, *id.* §§ 1.7, 1.9 (codified at N.C. Gen. Stat. §§ 160A-393, -393.1).

[2] Plaintiffs also alleged that the rezoning violated separation of powers principles and their right to procedural due process, but Plaintiffs conceded that they were no longer pursuing those claims at the hearing on Defendants' motion to dismiss, or in the alternative, for summary judgment, and Plaintiffs offer no argument in their brief related to any errors in the trial court's order related to separation of powers or procedural due process violations, abandoning these issues. *See* N.C. R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned.").

and hearing was to cure procedural deficiencies in the approval of the prior application.

¶ 13        On 1 December 2020, with Defendants' consent, Plaintiffs supplemented their complaint to include the approval of the December 2019 application on 5 October 2020. On 6 January 2021, Bluestream Partners and Mr. Palillo answered and moved to dismiss Plaintiffs' supplemental complaint under Rule 12(b)(6). On 2 February 2021, the Town and Mr. Herron answered and moved to dismiss Plaintiffs' supplemental complaint under Rule 12(b)(6).

¶ 14        On 8 April 2021, Defendants made a joint Motion to Dismiss, Motion for Judgment on the Pleadings, and Motion for Summary Judgment. The matter came on for hearing before the Honorable Daniel A. Kuehnert in Mecklenburg County Superior Court on 3 May 2021. The trial court granted the motion in an order entered 14 May 2021, ruling that Plaintiffs lacked standing to challenge the rezoning, and in the alternative, that if Plaintiffs had standing to challenge the rezoning, summary judgment in favor of Defendants was proper.

¶ 15        Plaintiffs timely noted appeal from the trial court's order.

## II.    Analysis

¶ 16        The dispositive issue in this appeal is Plaintiffs' lack of standing to challenge the rezoning.

### A.  Introduction and Standard of Review

¶ 17          "'Standing' refers to the issue of whether a party has a sufficient stake in an otherwise justiciable controversy that he or she may properly seek adjudication of the matter." *Creek Pointe Homeowner's Ass'n, Inc. v. Happ*, 146 N.C. App. 159, 165, 552 S.E.2d 220, 225 (2001) (citation omitted). It "is a necessary prerequisite to the court's proper exercise of subject matter jurisdiction." *Id.* at 164, 552 S.E.2d at 225 (citations omitted). It has been described as "that aspect of justiciability focusing on the party seeking a forum rather than on the issue he wants adjudicated." *Id.* at 165, 552 S.E.2d at 225 (internal marks and citation omitted).

¶ 18          "A universal principle as old as the law is that the proceedings of a court without jurisdiction of the subject matter are a nullity, and without subject matter jurisdiction, a court has no power to act." *Boseman v. Jarrell*, 364 N.C. 537, 548, 704 S.E.2d 494, 502 (2010) (cleaned up). Because standing is a question of law, we review the issue de novo. *Smith v. Forsyth Cnty. Bd. of Adjust.*, 186 N.C. App. 651, 653, 652 S.E.2d 355, 357 (2007). "Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *Horne v. Town of Blowing Rock*, 223 N.C. App. 26, 32, 732 S.E.2d 614, 618 (2012) (citation omitted).

**B. Standing in the Zoning Context**

¶ 19          It has become difficult for a neighboring property owner to establish that they have standing to challenge a zoning decision. While prior law required only that the

plaintiff have "a specific personal and legal interest in the subject matter" that was "directly and adversely affected" by a challenged ordinance, at least when the procedural vehicle for the challenge was an action for a declaratory judgment rather than a petition for certiorari to superior court from the proceedings before the relevant local governmental body, *Village Creek Prop. Owners' Ass'n*, 135 N.C. App. 482, 485, 520 S.E.2d 793, 795 (1999) (quoting *Taylor v. City of Raleigh*, 290 N.C. 608, 620, 227 S.E.2d 576, 583 (1976)), today, neighboring property owners must suffer "special damages" from a zoning decision to have standing to challenge it in an action for a declaratory judgment, *Cherry Cmty. Org. v. City of Charlotte*, 257 N.C. App. 579, 584, 809 S.E.2d 397, 401 (2018).

¶ 20        Historically, "special damages" were merely defined as "a reduction in the value of [] [the neighbor's] property[.]" *Jackson v. Guilford Cnty. Bd. of Adjustment*, 275 N.C. 155, 161, 166 S.E.2d 78, 83 (1969). However, today, "general allegations that a property use will impair property values in the general area [] will not confer standing[,]" *Cherry v. Wiesner*, 245 N.C. App. 339, 349, 781 S.E.2d 871, 878 (2016), and "[m]ere proximity to the site of the zoning action . . . is insufficient to establish 'special damages[,]'" *Smith*, 186 N.C. App. at 654, 652 S.E.2d at 358. Instead, a neighboring property owner affected by a zoning change must "suffer special damages distinct from those [] to the public at large" to have standing to challenge the decision from which the change resulted. *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C.

640, 644, 669 S.E.2d 279, 283 (2008).

¶ 21      Additionally, for over 100 years it was the law in North Carolina that the opinion of an owner of real property was presumptively competent evidence of its value, *see Gillis v. Arringdale*, 135 N.C. 295, 302, 47 S.E. 429, 432 (1904), but our Supreme Court overturned that rule in 2017 in *United Community Bank (Georgia) v. Wolfe*, 369 N.C. 555, 559-60, 799 S.E.2d 269, 272 (2017) ("*United Cmty. Bank*"). *Compare N.C. State Highway Comm'n v. Helderman*, 285 N.C. 645, 652, 207 S.E.2d 720, 725 (1974) ("Unless it affirmatively appears that the owner does not know the market value of his property, it is generally held that he is competent to testify as to its value even though his knowledge on the subject would not qualify him as a witness were he not the owner.") *with Cherry Cmty. Org.*, 257 N.C. App. at 589, 809 S.E.2d at 404 ("Uncontroverted opinion is no longer sufficient evidence in North Carolina.") (Hunter, J., concurring in result) (citing *United Cmty. Bank*).

¶ 22      Accordingly, under current law, general diminution of property values in the area does not confer standing on a neighboring owner to challenge a zoning decision, *Mangum*, 362 N.C. at 644, 669 S.E.2d at 283, and the neighbor's opinion of the diminution in value of the property the neighbor owns is not competent evidence to establish the neighbor's standing to challenge the decision, *Cherry Cmty. Org.*, 257 N.C. App. at 589, 809 S.E.2d at 404.

¶ 23      Plaintiffs' complaint alleges:

28.     Plaintiffs, as owners of property abutting, adjacent to, or in close proximity to the Rezoned Properties, will imminently suffer harm caused by the approval of the Rezoning, due to, *inter alia*:

>   a.     A material reduction in property values due to the use of the Rezoned Property as a Private Club and Event Center, which is entirely inharmonious with the rural residential, low density use of Plaintiffs' Properties; and
>
>   b.     The proposed development of the Rezoned Properties will cause Plaintiffs to suffer increases in intolerable noise, light, pollution, and traffic; diminution of the peaceful rural character of their neighborhood; loss of privacy; and loss in the use and enjoyment of Plaintiffs [sic] properties.

29.     As set forth above, Plaintiffs have a specific legal and personal interest in the Plaintiffs' properties, which are directly and adversely affected by the Town's approval of the rezoning.  In addition, Plaintiffs have been actively and continuously involved as much as possible throughout the rezoning process, in ways including, but not limited to, communicating with the developer, Bluestream, and the Town, by attending and speaking at meetings before the Board of Commissioners and the Community meeting.

30.     The Rezoning is an invasion of Plaintiffs' protected interests and their injury from the Rezoning is concrete and particularized, and actual and imminent.  A favorable decision in the current action will redress Plaintiffs' injury.

31.     Plaintiffs have standing as interested parties to bring this action for declaratory judgment, pursuant to N.C. Gen. Stat. § 1-254, *et seq.* and Rule 57 of the North Carolina Rules of Civil Procedure, to resolve the justiciable controversy which exists and arises from, *inter alia*, the Rezoning, approved by the Town on 11 June 2019.

¶ 24    Plaintiffs' complaint was not verified, and an affidavit was not attached as an exhibit to substantiate the allegations above. In responses to written discovery, Plaintiffs disclosed that they did not intend to engage any experts to prepare any reports or affidavits or testify at trial and described their damages in essentially the same way they did in the allegations quoted above. At Mr. Violette's deposition, he testified that the challenged rezoning was a drastic change from the previous zoning of the adjacent land; that the road running alongside his land and the adjacent land was already very busy and unsafe because of the addition of a new high school nearby; and that construction of the amenity center would diminish the value of his property—which he opined was worth $10 million—by $5 or $6 million because of increased noise, traffic, and light.[3]

¶ 25    North Carolina law no longer recognizes the right of neighboring property owners like Plaintiffs to challenge a zoning change based on allegations and testimony like Plaintiffs'. Plaintiffs have failed to make the showing required by *Mangum* that they "will suffer special damages distinct from those [] to the public at large" from the challenged rezoning. 362 N.C. at 644, 669 S.E.2d at 283. Moreover, under *United Community Bank*, the record evidence of the diminution in value of Plaintiffs' property is not competent evidence. 369 N.C. at 559-60, 799 S.E.2d at 272-

_____

[3] By contrast, Mr. Violette testified that construction of the amenity center would increase property values in Bailey's Glen, including the value of Mr. Palillo's home.

73. Accordingly, the trial court did not err in granting Defendants' motion.

### III. Conclusion

The trial court is affirmed because Plaintiffs lacked standing to challenge the rezoning.

AFFIRMED.

Judges DIETZ and GRIFFIN concur in result only.