**WISE v. HARRINGTON GROVE CMTY. ASS'N**

[151 N.C. App. 344 (2002)]

WILLIAM J. WISE AND LYNN P. WISE, PLAINTIFFS v. HARRINGTON GROVE COMMU-
NITY ASSOCIATION, INC., AND TOM FITZGERALD, TAMARA JAMES, DAVE
BECHERER, STEWART JOSLIN, BILL SCHULTZ, AND MIKE DALTON, IN THEIR
OFFICIAL CAPACITIES AS MEMBERS OF THE HARRINGTON GROVE COMMUNITY ASSOCIATION
BOARD OF DIRECTORS, DEFENDANTS

No. COA01-661

(Filed 16 July 2002)

**Associations— homeowners—violating declaration of cove-
nants—authority to charge reasonable fines**

The trial court did not err in a declaratory judgment action by
concluding that N.C.G.S. § 47F-3-102(12) of the North Carolina
Planned Community Act (PCA) granted defendant homeowners'
association formed prior to 1 January 1999 the authority to
charge reasonable fines against its members without the subdivi-
sion's declaration of covenants expressly providing for such
power, because: (1) while the declaration does not expressly pro-
vide for the power to fine, the PCA provides that additional
power; (2) there is no language in the articles of incorporation or
the declaration that limits or restricts the association's power to
fine; and (3) plaintiffs failed to preserve any constitutional issue
regarding impairment of property or contract rights by failing to
assign any error as required by N.C. R. App. P. 10(a).

Judge WYNN dissenting.

Appeal by plaintiffs from declaratory judgment entered 25 March
2001 by Judge Gary Trawick in Wake County Superior Court. Heard in
the Court of Appeals 13 March 2002.

*Hunton & Williams, by William D. Dannelly and Carolyn A.
Dubay, for plaintiffs-appellants.*

*Jordan Price Wall Gray Jones & Carlton, by Henry W. Jones, Jr.,
Hope Derby Carmichael, and Brian S. Edlin, for defendants-
appellees.*

TYSON, Judge.

William J. Wise and Lynn P. Wise ("plaintiffs") appeal from a
declaratory judgment entered in favor of Harrington Grove
Community Association, Inc. ("Association"). We affirm the trial
court's judgment.

## I. Facts

Plaintiffs purchased their home in the spring of 1999, automatically became members of the Association by virtue of their status as homeowners in the Harrington Grove Subdivision ("Subdivision"), and became subject to the recorded "Declaration of Covenants, Conditions, and Restrictions" ("Declaration") of the Subdivision. Article VII, Section 2(a) of the Declaration requires prior written approval from the Association's Architectural Committee ("Committee") before any "building, fence, or other structure" is "erected, placed, or altered" on a homeowner's lot.

Plaintiffs constructed a retaining wall around the perimeter of their back yard without obtaining prior written approval from the Committee. The Association requested that plaintiffs file an application for the retaining wall *post facto*. Plaintiffs complied. After review, the Committee denied plaintiffs' application to approve the previously constructed retaining wall.

Plaintiffs were provided written notice of the Association's Board of Directors' intention to fine plaintiffs $150.00 for their violation of the Declaration. Prior to the imposition of the fine, the Association afforded plaintiffs notice and an opportunity to be heard on the matter. Plaintiffs presented their case through counsel, and the Committee presented its case at a hearing conducted on 7 July 1999. Following the hearing, the Association issued a written decision that imposed a one-time fine of $150.00 for plaintiffs' failure to obtain written approval prior to constructing the retaining wall.

Plaintiffs filed an amended complaint on 26 May 2000 against defendants seeking: (1) a declaratory judgment that the Association's approval of plaintiffs' swimming pool application on 2 March 1999 constituted approval of a wall, (2) a declaratory judgment that the Association's attempt to levy a fine was *ultra vires* and void, (3) injunctive relief, (4) unfair and deceptive trade practices, and (5) damages. Defendants answered on 14 June 2000. Plaintiffs moved for partial summary judgment on 23 February 2001. Prior to hearing, the parties entered into a settlement agreement that resolved all issues except plaintiffs' declaratory judgment claim.

The trial court conducted a hearing on 5 March 2001. On 25 March 2001, the trial court: (1) denied plaintiffs' motion for partial summary judgment, (2) denied plaintiffs' request for injunctive relief, and (3) declared that the Association had authority, pursuant to the North

Carolina Planned Community Act ("PCA"), to levy a fine against plaintiffs. Plaintiffs appeal.

## II. Issue

The sole issue presented is whether G.S. § 47F-3-102(12) of the PCA grants the Harrington Grove Community Association, formed prior to 1 January 1999, authority to charge reasonable fines against its members without the Declaration expressly providing for such power.

Plaintiffs contend that the "Association's Articles expressly provide that its power is strictly limited to those [powers] conferred in the Declaration." They argue that the Declaration does not contain any power to impose fines, and G.S. § 47F-3-102(12) cannot automatically confer such power on the Association, unless "the Declaration is amended to allow for the Association to exert power against homeowners beyond what is already provided in the Declaration." Plaintiffs claim that the "plain meaning of [G.S.] § 47F-3-102(12) is obvious: the association may impose a fine upon reasonable notice to the homeowner *if the declaration or articles of incorporation so allow.*" (Emphasis supplied).

## III. North Carolina Planned Community Act

The PCA is codified at Chapter 47F of the North Carolina General Statutes. G.S. 47F-1-102(a) states that "This Chapter applies to all planned communities within this State except as provided in subsection (b) of this section." N.C. Gen. Stat. § 47F-1-102(a) (2001). Subsection (b) excludes from the PCA planned communities which contain twenty or fewer lots and planned communities in which all lots are exclusively restricted for non-residential purposes, "unless the declaration provides or is amended to provide that this Chapter does apply to that planned community." N.C. Gen. Stat. § 47F-1-102 (b)(1)-(2) (2001).

It is undisputed that Harrington Grove Subdivision: (1) contains more than twenty lots, (2) contains lots which are not all restricted to non-residential purposes, (3) is located within the State of North Carolina, (4) that the Association was incorporated on 29 April 1987, and (5) the Declaration was enacted on 11 May 1987 and filed on 17 May 1987. We hold that the Subdivision is a planned community as defined by the PCA.

## A. PCA's Applicability

### 1. Associations Formed After 1 January 1999

The PCA is generally applicable prospectively from 1 January 1999. The official North Carolina Comment ("Comment") to G.S. § 47F-1-102, "Applicability", states that "The Act is effective January 1, 1999 and applies *in its entirety* to all planned communities created on or after that date . . . ." (Emphasis supplied). The Comment reiterates Section 3 of the Session Law, enacting the PCA: "This act becomes effective January 1, 1999 and applies to planned communities created on or after that date." North Carolina Planned Community Act of October 15, 1998, ch. 199, sec. 3, 1998 N.C. Sess. Laws 674-692, 691.

In addition to the PCA applying to all planned communities formed after 1 January 1999, the PCA limits associations' flexibility to vary or modify the PCA's applicability. The PCA provides that: "Except as specifically provided in specific sections of this Chapter, the provisions of this Chapter may not be varied by the declaration or bylaws." N.C. Gen. Stat. § 47F-1-104(a) (2001). "To be sure, there are many central statutory provisions that can not [sic] be varied by the declaration or bylaws; however, there are also numerous instances throughout the act where the declaration or bylaws can alter significant provisions of the PCA." James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 30A-28, at 1243 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999).

Article 3 of the PCA entitled "Management of Planned Community" contains a section entitled "Powers of owners' association." G.S. § 47F-3-102 lists seventeen "powers" the Act confers upon "owners' associations." N.C. Gen. Stat. § 47F-3-102(1)-(17) (2001). All seventeen powers apply to associations formed on or after 1 January 1999. *See* Comment to N.C. Gen. Stat. § 47F-1-102.

### 2. Associations Formed Before 1 January 1999

The PCA also provides a procedure that allows associations formed prior to 1 January 1999 to "opt in" and adopt the entire Act. N.C. Gen. Stat. § 47F-1-102(d) (2001) provides that:

Any planned community created prior to the effective date of this Chapter may elect to make the provisions of this Chapter applicable to it by amending its declaration to provide that this

Chapter shall apply to that planned community. The amendment may be made by affirmative vote or written agreement signed by lot owners of lots to which at least sixty-seven percent (67%) percent of the votes in the association are allocated or any smaller majority the declaration specifies. To the extent the procedures and requirements for amendment in the declaration conflict with the provisions of this subsection, this subsection shall control with respect to any amendment to provide that this Chapter applies to that planned community.

Certain provisions of the PCA apply retroactively. The Session Law enacting the PCA and the Comment to the codified version of the PCA states that certain provisions apply to associations formed prior to 1 January 1999. At bar, we focus only on the powers contained in section 47F-3-102.

The official transcript of the Session Law enacted by the North Carolina General Assembly includes sections 2 and 3, which are not contained in the codified version of the Session Law found in the North Carolina General Statutes. Section 3 of the Session Law states: "G.S. 47E-3-102(1) through (6) and (11) through (17), G.S. 47E-3-107(a)(b), and (c), G.S. 47E-3-115, and G.S. 47E-3-116 as enacted by Section 1 of this act apply to planned communities created prior to the effective date. . . ." North Carolina Planned Community Act of October 15, 1998, ch. 199, sec. 3, 1998 N.C. Sess. Laws at 691.

Section 2 of the Session Law states: "The Revisor of Statutes shall cause to be printed with this act all relevant portions of the official comments to the North Carolina Planned Community Act and all explanatory comments of the drafters of this act, as the Revisor deems appropriate." North Carolina Planned Community Act of October 15, 1998, ch. 199, sec. 2, 1998 N.C. Sess. Laws at 691.

Chapter 47E as written in the Session Law was later codified as Chapter 47F in the North Carolina General Statutes. The Comment to G.S. § 47F-1-102 states that "G.S. 47F-3-102(1) through (6) and *(11) through (17)*, G.S. 47F-3-107(a)(b) and (c), G.S. 47F-3-115 and G.S. 47F-3-116 *also apply to planned communities created prior to January 1, 1999.*" (Emphasis supplied). N.C. Gen. Stat. § 47F-102, North Carolina Comment. The Comment to G.S. § 47F-3-102 also states that: "Subdivisions (1) through (6) and (11) through (17) *apply to planned communities formed prior to January 1, 1999.*" N.C.

Gen. Stat. § 47F-3-102, North Carolina Comment. *See also Creek Pointe Homeowner's Ass'n, Inc. v. Happ*, 146 N.C. App. 159, 552 S.E.2d 220 (2001) (applying G.S. § 47F-3-102(4) retroactively to homeowners' associations formed prior to the PCA's effective date of 1 January 1999).

We hold that the plain language of the Session Law enacting the PCA states that the power contained in section 47F-3-102(12) applies to homeowner associations formed prior to 1 January 1999.

### B. N.C. Gen. Stat. § 47F-3-107.1

G.S. § 47F-3-107.1, "Procedures for fines and suspension of planned community privileges or services," provides procedures by which an association may impose fines or suspensions upon homeowners within an association.

> Unless a specific procedure for the imposition of fines or suspension of planned community privileges or services is provided for in the declaration, a hearing shall be held before an adjudicatory panel appointed by the executive board to determine <u>if any lot owner should be fined</u> or if planned community privileges or services should be suspended <u>pursuant to the powers granted to the association in G.S. 47F-3-102(11) and (12)</u>. If the executive board fails to appoint an adjudicatory panel to hear such matters, hearings under this section shall be held before the executive board. The lot owner charged shall be given notice of the charge, opportunity to be heard and to present evidence, and notice of the decision. If it is decided that a fine should be imposed, a fine not to exceed one hundred fifty dollars ($150.00) may be imposed for the violation and without further hearing, for each day after the decision that the violation occurs. <u>Such fines shall be assessments secured by liens under G.S. 47F-3-116</u>. If it is decided that a suspension of planned community privileges or services should be imposed, the suspension may be continued without further hearing until the violation or delinquency is cured.

N.C. Gen. Stat. § 47F-3-107.1 (2001) (emphasis supplied).

### C. N.C. Gen. Stat. § 47F-3-102

While G.S. § 47F-3-107.1 provides the procedure, G.S. § 47F-3-102(12) grants associations power to fine or suspend privileges of homeowners within the association.

Subject to the provisions of the articles of incorporation or the declaration and the declarant's rights therein, the association may:

. . . .

(12) After notice and an opportunity to be heard, <u>impose reasonable fines</u> or suspend privileges or services provided by the association (except rights of access to lots) for reasonable periods for violations of the declaration, bylaws, and rules and regulations of the association;

. . . .

N.C. Gen. Stat. § 47F-3-102(12) (emphasis supplied).

It is undisputed that the Association was created prior to 1 January 1999. The dispositive issue here is the meaning of the phrase "apply to planned communities created prior to the effective date . . . ." used in Section 3 of the Session Law. Plaintiffs assert the provisions "become available" for a planned community to adopt by amendment to its declaration. If not adopted, the Association does not have the power to fine. The Association asserts that "the [PCA] allows the imposition of fines regardless of what is contained in a community association's declaration or by-laws."

We disagree with both interpretations. We hold that the plain language of section 47F-3-102 and the language of Section 2 and 3 of the certified transcript of the Session Laws grants specific powers to associations formed prior to 1 January 1999 "subject to the provisions of the articles of incorporation or the declaration and the declarant's rights therein."

G.S. § 47F-3-116(a) states that "*Unless the declaration otherwise provides*, fees, charges, late fees, *fines*, interest and other charges imposed pursuant to G.S. 47F-3-102, 47F-3-107, 47F-3-107.1, and 47F-3-115 *are enforceable as assessments* under this section." N.C. Gen. Stat. § 47F-3-116(a) (2001) (emphasis supplied). The Association's Declaration is silent and does not provide "otherwise" regarding fines. "Such fines shall be assessments secured by liens under G.S. 47F-3-116." N.C. Gen. Stat. § 47F-3-107.1. Pursuant to the plain language of the PCA, fines imposed by section 47F-3-102(12) are "assessments."

The PCA's grant of the power to fine contained in G.S. § 47F-3-102(12), by the statute's plain language, is not absolute. The

power is "[s]ubject to the provisions of the articles of incorporation or the declaration and the declarant's rights therein." We must determine whether there are provisions in the Association's Articles of Incorporation, or the Declaration and the Declarant's rights therein, that limits the Association's power to fine the Association's members as granted by the PCA. We have thoroughly reviewed the Association's Articles of Incorporation, Declaration and the Declarant's rights therein. We hold that no provision contained in those documents *limits* the Association's power to fine, which the North Carolina General Assembly granted to all community associations formed prior to 1 January 1999 by enacting the PCA.

Plaintiffs interpret the plain language "subject to" essentially to mean that if the Association "[did] not have the power in their Declaration or Articles to impose the fines at issue, the action of Defendants to do so was *ultra vires* and void." We disagree.

Plaintiffs' and the dissent's reading of the phrase "subject to" is synonymous with the language the General Assembly used in section 47F-3-120: "the court may award reasonable attorneys' fees to the prevailing party *if recovery of attorneys' fees is allowed in the declaration.*" N.C. Gen. Stat. § 47F-3-120 (2001) (emphasis supplied). The phrase "subject to" is unambiguous, and its meaning is clear. The General Assembly did not grant the power to fine if "*allowed in the declaration.*" "Subject to" cannot mean "if allowed in the declaration." The dissent's exegesis of the phrase "subject to" renders the distinction between "subject to" and "if allowed in the declaration" non-existent.

"Subject to" means that the Declaration and/or Articles of Incorporation can restrict or limit the power that the PCA grants to community associations created prior to 1 January 1999. Not allocating a power is different than limiting a power. The former is a condition precedent to receiving the power, and the latter limits the power already given. Plaintiffs' argument is overruled.

### D. The Association's Declaration and Articles

Article III(a) of the Association's Articles of Incorporation states that to further the purposes of the Association it can "exercise all of the powers and privileges and perform all of the duties and obligations of the Association as set forth in the Declaration." Plaintiff claims that this statement "strictly limits" the Association's powers to what is contained in the Declaration. This provision of the

Association's Articles of Incorporation is not written that restrictively. Two listed Association purposes are: (1) "to provide for architectural control of the Lots within Harrington Grove;" and (2) "to promote the health, safety and welfare of the residents within Harrington Grove." The statutory power to fine plaintiffs for violating the Declaration by constructing a retaining wall without obtaining prior written approval promotes both stated purposes listed in the Articles of Incorporation.

The Declaration specifically provides for the power to charge assessments. Both annual and special assessments may be charged to the Association's members. The Declaration only limits the amount of the annual and special assessments. The Declaration is silent concerning the Association's ability to fine and assess its members for violating the Declaration.

While the Declaration does not expressly provide for the power to fine, the PCA provides that additional power. We find no language in the Articles of Incorporation or the Declaration that limits or restricts the Association's power to fine, which is granted by the PCA.

Article VIII, Section 4 of the Declaration entitled "Enforcement" states that:

> The Association or any Member shall have the right to enforce these covenants and restrictions by any proceeding at law or in equity against any person or persons violating or attempting to violate enforcement of these covenants against the land and to enforce any lien created by these covenants. <u>Enforcement may be to restrain violation or to recover damages resulting therefrom</u>. (Emphasis supplied).

This provision in the Declaration grants the Association the power to enforce "any lien created by these covenants." It also grants power to "enforce these covenants and restrictions by *any proceeding at law*." It is undisputed that the plaintiffs violated the covenants. The PCA provides an additional power to the Association's arsenal of enforcement.

The dissent states that "the declarations specifically limit the remedy that the association may obtain against a homeowner." The dissent reads "may" as "may only." The language of the Declaration is not that restrictive.

There is no requirement that an older planned community opt in to the PCA in order to receive the benefits of most of the powers conferred by that Act. Through the application of the powers section to pre-1999 planned communities, formerly impotent associations will soon discover that they are now strong. These reinvigorated associations will probably surprise homeowners when they start flexing their enforcement muscles.

Patrick K. Hetrick, *Of "Private Governments" and the Regulation of Neighborhoods: The North Carolina Planned Community Act*, 22 Campbell L. Rev. 1, 51 (1999); *See also* Webster, § 30A-28, at 1261-1272 (discussing in detail the sweeping changes and the powers the PCA confers upon associations, including retroactivity of thirteen of the seventeen powers enumerated in the statute).

The Association is not prohibited by its Declaration or Articles of Incorporation from fining its members for violation of the Declaration. The PCA grants that power to the extent not prohibited by the Articles of Incorporation or the Declaration and the Declarant's rights therein.

## IV. Constitutional Argument

Alternatively, plaintiffs attempt to argue that if the PCA allows the Association to "impose fines and liens upon homeowners . . . [the PCA] would violate fundamental constitutional principles protecting against the denial of due process and the impairment of property rights." Plaintiffs failed to preserve this issue for appellate review. "The scope of appellate review is limited to those issues presented by assignment of error set out in the record on appeal." *State v. Thomas*, 332 N.C. 544, 554, 423 S.E.2d 75, 80 (1992) (citing N.C.R. App. P. 10(a)), *disapproved on other grounds, State v. Richmond*, 347 N.C. 412, 495 S.E.2d 677 (1998); *see also Koufman v. Koufman*, 330 N.C. 93, 97-98, 408 S.E.2d 729, 731 (1991)). Plaintiffs did not assign any error in the record regarding unconstitutional impairment of property or contract rights. N.C.R. App. P. 10(a) (2002). The trial court did not make any finding or conclusion concerning this argument. *State v. Cooke*, 306 N.C. 132, 137, 291 S.E.2d 618, 621 (1982) (citations omitted) (constitutional questions not raised before the trial court will not ordinarily be considered on appeal). This issue is not properly preserved or presented for our consideration.

## V. Conclusion

The trial court correctly held that the PCA provides the Association with the power to impose reasonable fines against its members. We must give effect to the plain meaning of G.S. § 47F-3-102. There is nothing contained in the Association's Articles of Incorporation or Declaration which limits the powers contained in G.S. 47F-3-102(12).

We hold that the trial court properly applied the statutes to the facts of this case. The judgment of the trial court is affirmed.

Affirmed.

Judge McGEE concurs.

Judge WYNN dissents.

WYNN, Judge dissenting.

Homeowners William J. Wise and his wife, Lynn P. Wise, argue that a 1998-enacted statute does not confer upon their 1987-created homeowner's association the authority to levy fines upon them where the declarations of that association only authorizes the restraint of the violation or the recovery of damages. I agree with the homeowners.

The issue on appeal is whether Chapter 47F subordinates the statutory authority granted by N. C. Gen. Stat. § 47F-3-102(12) to impose fines to the expressed declarations of an association that restricts the authority of the association to impose a fine.[1] I would find that the declarations in this case prohibits the association to impose a fine against the homeowners.

N.C. Gen. Stat. § 47F-3-102(12) which authorizes an association to impose fines against homeowners states that the association may:

---

1. The majority opinion undertakes an extensive discussion on the applicability of G.S. § 47F-3-102(12) (2001) to an association created before the enactment of the Act. However, the answer to that query is found in the comments to N.C. Gen. Stat. § 47F-1-102:

> G.S. § 47F-3-102 . . . (11) through (17) . . . also apply to planned communities created prior to January 1, 1999.

Nothing more need be said on this issue.

(12) [a]fter notice and an opportunity to be heard, impose reasonable fines or suspend privileges or services provided by the association (except rights of access to lots) for reasonable periods for violation of the declaration, bylaws, and rules and regulations of the association.

However, the introductory language of N.C. Gen. Stat. § 47F-3-102 specifically states that the authority of an association to impose fines against homeowners under subsection (12) is:

**Subject to** the provisions of the articles of incorporation or the declaration and the declarant's rights therein . . . .

(emphasis added). The majority implies that there is ambiguity in the "subject to" language of Chapter 47F. However, not every legislative act requires judicial interpretation; for assuredly, our courts have recognized that when the meaning of a statute is clear and unambiguous, we do not engage in discussions of legislative intent. Rather, we accord the legislature the respect of following the plain meaning of its words. In my opinion there is no ambiguity in the "subject to" language of N.C. Gen. Stat. § 47F-3-102. The term "subject to" means that the provisions of the declarations control as between statute and the declarations. Thus, N.C. Gen. Stat. § 47F-3-102 subjects the applicability of subsection (12) to the provisions under the declarations of the association.

In the subject case, the powers of the homeowners' association are specified in its articles of incorporation, bylaws and declarations. Additional burdens, restrictions and obligations are imposed on the homeowners in their restrictive covenants.

Under the declarations, the homeowners' association is empowered to enforce covenants, such as the one in this case, by proceeding in law or equity against the homeowner. However, the declarations specifically limit the remedy that the association may obtain against a homeowner:

Enforcement may be to restrain violation or to recover damages resulting therefrom.

Thus, the declarations limit the authority of the association to any remedy other than a restraint of the violation or damages. Moreover, the declarations expressly limit the power of the homeowners' association to "exercise all of the powers and privileges and perform all of the duties and obligations of the Association as set forth in the Declaration."

BAILEY v. WESTERN STAFF SERVS.

[151 N.C. App. 356 (2002)]

In sum, there is no dispute that the homeowners in this case never amended their declarations to allow the imposition of a fine against them. To the contrary, their declarations limit the remedy for covenant violations to the restraint of the violation or damages. Since N.C. Gen. Stat. § 47F-3-102 respects the rights of homeowners to limit their exposure to fines by their homeowners association, I dissent from the majority opinion upholding the imposition of a fine against the Wises.